**HAVOCO OF AMERICA, INC.,**
Plaintiff-Appellant,

v.

**HILCO, INC., a Tennessee corporation, Elmer C. Hill and Sumitomo Shoju America, Inc., a New York corporation,**
Defendants-Appellees.

No. 85–2060.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1986.

Aug. 25, 1986.

Robert F. Coleman and Susan B. Padove, Robert F. Coleman & Associates, Chicago, Ill., for plaintiff-appellant.

Michael A. Stick, Butler Rubin Newcomer Saltarella & Boyd, Chicago, Ill., for Hilco and Hill.

Sheldon Karon, David L. Weinstein, Karon, Morrison & Savikas, Ltd., for Sumitomo Shoju.

Before WOOD, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

In 1975, Havoco of America, Ltd. (Havoco) entered into a contract to supply coal to the Tennessee Valley Authority (TVA). It assigned that contract to R & F Coal Company (R & F), in 1976. Since that time, the contract and its assignment have been the subject of five separate lawsuits. In this case, Havoco alleges that the defendants, through a variety of unlawful actions, coerced it to enter into the assignment contract. Havoco seeks damages caused by the defendants' fraud, misrepresentations, breach of fiduciary duty and breach of contract. The district court concluded that in 1976, before Havoco ever entered into the assignment contract, it had full knowledge of the fraud and misrepresentations which form the basis of this complaint. Therefore, the district court held that, when Havoco entered the assignment contract with this knowledge, it waived, as a matter of law, its right to sue for damages.

This court has already considered a similar waiver argument in this case. *Havoco of America, Ltd. v. Hilco*, 731 F.2d 1282 (7th Cir.1984). In 1982, the district court had granted the defendants' motion for summary judgment. R. 100. At that time, the district court held that, when Havoco filed suit to enforce the assignment contract with full knowledge of the fraud, it had waived, as a matter of law, any claims for damages based on the fraud. This court reversed that judgment holding that, although Havoco knew of the fraud in 1978 when it brought suit to enforce the assignment contract, genuine issues of fact concerning Havoco's ability to abandon the contract and its intent to waive its claims remained unresolved. *Havoco*, 731 F.2d at 1294. Relying on the legal framework developed by this court in 1984, we once again hold that genuine issues of material fact remain unresolved. Therefore, we reverse and remand this case to the district court for proceedings consistent with this opinion.

*Facts*

In February 1975, Havoco entered into a long-term contract to supply coal to the TVA. To meet this long-term commitment, Havoco entered into several related agreements. R & F agreed to provide the coal which M/G Transport Services, Inc. (M/G) would deliver to the TVA. Sumitomo Corporation of America (Sumitomo) agreed to post the revolving letter of credit necessary to finance the purchase of the coal. Havoco also hired Hilco, Inc. (Hilco) to provide professional services for Elmer Hill, the Havoco officer who handled the TVA contract. In August 1975, the TVA exercised its right to reopen negotiations on the contract price of the coal. Mr. Hill represented Havoco in the negotiations which continued unsuccessfully for approximately six months.

In late February and March 1976, a series of events and meetings ultimately lead Havoco to assign the contract to R & F. During a February 20, 1976, meeting between representatives of the TVA, Havoco and R & F, Barry Van Der Meulen, Havoco's president, disclosed to the TVA that Havoco had discussed with R & F the possibility of assigning the contract.[1] On March 2, 1976, the TVA informed Havoco that, although it would continue negotiating, it would accept no further coal shipments. Also in early March, Havoco discovered that Sumitomo had failed to post the revolving letter of credit. Without this financing, R & F refused to make future deliveries and, on March 15, 1976, filed suit against Havoco and Sumitomo seeking to recover $2.6 million allegedly owed for coal already delivered.[2] R & F obtained a preliminary injunction freezing Havoco's assets. Finally, on March 19, 1976, Havoco agreed to assign the TVA contract to R & F. As consideration, R & F agreed to pay a royalty to Havoco on each ton of coal sold

---

1. The parties characterize what actually transpired at that meeting differently. Havoco claims that although the assignment was discussed, no agreement was actually reached. R & F claims that Havoco orally agreed to assign the contract at that meeting.

2. R & F dismissed this suit with prejudice on March 23, 1976.

to the TVA. In June 1977, R & F entered into a long-term agreement to deliver coal to the TVA.

R & F's suit against Havoco and Sumitoma was the first of several legal battles over the contract and its assignment. M/G also sued Havoco seeking to recover damages for breach of the coal transportation contract.[3] In January 1978, Havoco filed suit against Mr. Hill, Hilco and R & F. It claimed that the defendants had violated the Sherman Antitrust Act. The 1978 complaint also contained pendent state claims based on fraud, breach of contract and breach of fiduciary duty. This court affirmed the district court's decision to dismiss the antitrust count and the pendent state claims. *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549 (7th Cir.1980). Havoco then chose to pursue its claim for breach of the assignment contract against R & F in the Eastern District of Tennessee. After the case was transferred to the Northern District of Illinois, the parties agreed to a settlement. Havoco received $1,966,083.40 and executed a covenant not to sue R & F for any claim arising out of the assignment of the contract. Havoco expressly reserved its right to pursue its claims against other parties.

In January 1981, Havoco exercised that right by filing the complaint in this case. Originally, the complaint named only Mr. Hill and Hilco as defendants. However, in November 1981, the plaintiff was granted leave to amend the complaint to include counts against Sumitomo. The amended complaint contains six counts. It includes counts against all of the defendants for: conspiracy to defraud (count I); tortious interference with contractual relations (count III); and common law fraud (count IV). The complaint also contains counts against Mr. Hill and Sumitomo for breach of fiduciary duty (counts II, V) and a count against Sumitomo for breach of contract (count VI). Havoco alleges that the defendants engaged in a variety of illegal acts which ultimately forced Havoco to assign the TVA contract to R & F. Havoco

seeks a variety of relief including $213.8 million in lost profits and $10 million in punitive damages.

In 1982, the district court granted the defendants' first motion for summary judgment on all counts except the breach of contract count against Sumitomo (count VI). R. 100. The court concluded that, when Havoco initiated the suit against R & F for breach of the assignment contract, it possessed substantially all the information that it now alleges as a basis for its causes of action for fraud, misrepresentation, and breach of fiduciary duty. Therefore, the court held that, when Havoco settled that lawsuit with R & F, it waived its current claims. Memorandum Opinion and Order at 11. On appeal, we agreed with the district court that there was no issue of material fact concerning Havoco's knowledge. *Havoco*, 731 F.2d at 1285. However, we also determined that, under Illinois law, knowledge of the fraud alone was not sufficient to constitute waiver as a matter of law. "An additional and essential element is that the injured party intend to affirm the contract and intend to abandon his right to recover damages for loss resulting from the fraud." *Lee v. Heights Bank*, 112 Ill.App.3d 987, 68 Ill.Dec. 514, 520, 446 N.E.2d 248, 254 (1983), *petition for leave to appeal denied*, No. 58306 (Ill. Sup.Ct. Oct. 4, 1983); *see Havoco*, 731 F.2d at 1289–90. Because the record contained no evidence of Havoco's ability to rescind or abandon performance when it learned of the fraud or of the plaintiff's intent to waive its right to sue, we held that Havoco's conduct did not establish waiver as a matter of law. *Havoco*, 731 F.2d at 1294.

Following remand, the defendants filed a second motion for summary judgment. Rather than focusing on the issues of Havoco's ability to rescind and intent to waive when it brought suit in 1978, the defendants submitted evidence that indicated Havoco knew of the fraud in 1976 before it ever entered into the assignment contract. The district court once again determined that there was no issue of material fact as

---

**3.** The parties agreed to dismiss this suit on November 30, 1978 during the trial.

to whether, by March 19, 1976, Havoco "had full knowledge of the predicate acts of the alleged fraud and conspiracy which form the basis of its current complaint."[4] R. 178; Memorandum Opinion and Order at 11–12. The district court further concluded that the defendants had established that Havoco intended to abandon its right to sue by proving that Havoco voluntarily executed, affirmed, and performed the written contract of assignment after it had knowledge of the alleged fraud and other wrongdoing. Memorandum Opinion and Order at 14. The court granted summary judgment on all counts including the breach of contract count against Sumitomo. Although the factual focus is different, the issues in this appeal are the same ones considered by this court in 1984: first, whether Havoco had knowledge of the fraud at the time it assigned the contract to R & F; second, whether Havoco, as a matter of law, waived its claim for fraud and misrepresentation when it assigned the contract.

*Havoco's Knowledge*

Havoco argues that the court erroneously resolved factual questions concerning its knowledge of the alleged fraud when it entered into the assignment contract. Mr. Van Der Meulen, its president, filed an affidavit in which he states that he did not have sufficient knowledge of the fraud before the assignment. Upon examination of the record, we agree with the district court. Mr. Van Der Meulen's deposition testimony indicates that, prior to the assignment, he was aware of many of the facts which now form the basis of this complaint. The facts were at least sufficient to make it Havoco's "duty to use ordinary diligence to make further investigations" before it assigned the contract. *Eisenberg v. Goldstein*, 29 Ill.2d 617, 195 N.E.2d 184, 186 (1963), *cert. denied*, 377 U.S. 964, 84 S.Ct. 1645, 12 L.Ed.2d 735 (1964). Mr. Van Der Meulen's new affidavit, R. 169, does not create a genuine issue of fact. To the extent that this affidavit contradicts, without explanation, his deposition testimony it can be disregarded. *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985). The remainder of the affidavit merely establishes that the precise extent of the fraud became apparent only after the contract had been assigned. Therefore, we agree with the district court and hold that there is no genuine issue of material fact concerning Havoco's knowledge of the alleged fraud when it assigned the TVA contract. However, our prior opinion in this case makes it clear that, under Illinois law, affirmance of a contract with full knowledge of the fraud may not, standing alone, be sufficient to establish waiver.

*Waiver*

Even though we fully accept the district court's determination that Havoco, through its president, was fully cognizant of the pertinent facts by the time of the assignment of the contract, we cannot affirm its judgment unless we determine that, as a matter of law, Havoco waived its claims by assigning the contract. In undertaking this inquiry, we must candidly acknowledge, at the outset, that it is difficult to chart a straight analytical course through this area. We have a great deal of sympathy for the earlier panel of this court and for the district court who have already attempted this navigational feat.

■ Our obligation can be simply stated: As a federal court sitting in diversity, *see* 28 U.S.C. § 1332, we must apply state law

4. The district court made five specific observations relating to Havoco's knowledge: 1) in January, 1976, Havoco knew that Mr. Hill had recommended that R & F purchase the TVA contract; 2) by February 20, 1976, Havoco was aware that Mr. Hill had made misrepresentations and Mr. Van Der Meulen suspected and distrusted him; 3) at the February 20 meeting with the TVA, Havoco learned that Mr. Hill would represent R & F in negotiations with the TVA; 4) by March 5, 1976, Havoco was convinced that Mr. Hill was acting contrary to Havoco's interests; 5) in early March, 1976, Havoco was aware of and concerned about Sumitomo's cancellation of the revolving letter of credit and Havoco knew that neither Sumitomo nor Hill had disclosed vital financing information to the TVA. These findings were based on deposition testimony of Mr. Van Der Meulen. R. 178; Memorandum Opinion and Order at 11.

to resolve all substantive questions. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, it is our obligation to determine what approach the Supreme Court of Illinois, if presented with this question today, would take. *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern National Insurance Group*, 750 F.2d 619, 624 (7th Cir. 1984); *see generally West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940); *White v. United States*, 680 F.2d 1156 (7th Cir.1982). Moreover, Illinois law does not deal with the issue of waiver in the context of an assignment contract. Nevertheless, the underlying policies are sufficiently clear that we can proceed with some confidence.

■ First, in the prior appeal, we decided that Illinois would follow the general rule that a "party which continues to perform a partially executed contract, particularly where it would be prejudicial to discontinue performance, does not waive its right to damages for fraud." *Havoco*, 731 F.2d at 1286. We went on to say that "[t]he question whether the contract is executory or partially performed goes, of course, to the practicability of recission or disaffirmance." *Id.* at 1287. In short, a plaintiff should not be permitted to recover for self-inflicted injuries while he speculates about the outcome of the contract. *Id.* We will not apply the principle of waiver by affirmance when attempted recission would be impracticable or cause further injury.

Havoco has argued that a variety of events including Sumitomo's failure to provide the revolving letter of credit, R & F's refusal to deliver coal, the lawsuit filed by R & F in mid-March, the preliminary injunction obtained by R & F in the lawsuit and Mr. Hill's misrepresentations to the TVA made it impossible for it to meet the requirements of the TVA contract. There-

fore, the assignment was, in Havoco's view, an effort to salvage what could be salvaged from a contract which had been "torpedoed" by the defendants. Rather than constituting a "self-inflicted injury," it constituted, in Havoco's view, a mitigation of injury.

The district court made two observations on this point. First, the court found that Havoco's claim that the defendants' conduct in early March 1976 made it impossible for it to avoid entering into the assignment contract was not relevant because the "dye [sic] was cast," R.178 at 13, on February 20, 1976, when Van Der Meulen orally agreed to assign the contract. Memorandum Opinion and Order at 13–14. At that point, the district court apparently believed, Havoco was free to reject the assignment contract and continue to perform under the TVA contract. Second, the district court noted that it "seriously doubts that it would have been impractical or prejudicial for Havoco to either forego execution ·of the written contract when it learned of the fraud or disaffirm it shortly thereafter." *Id.* at 14 n. 6. While there certainly is record evidence which supports the "serious doubts" of the district judge, we do not believe that, on this record, the matter can be resolved at summary judgment. There is, at least on this record, a significant factual dispute as to whether Havoco entered the assignment contract as a matter of independent business judgment or because the alleged fraud of the defendants made such an assignment the only available course if any benefit of the original contract was to be preserved.

■ The earlier panel of this court indicated that the foregoing inquiry would lead an Illinois court "as a corollary" to inquire as to whether the record establishes that Havoco intended to waive its rights.[5] It is

---

5. The district court also noted that Havoco waited five years to file this lawsuit. That analysis must also consider that, during the five-year period, Havoco was not silent. The 1978 lawsuit contained allegations of fraud and breach of fiduciary duty. After those claims were dismissed without prejudice, Havoco chose to pur-

sue only its breach of contract action against R & F. A little more than one year after that suit was settled, Havoco filed this cause of action. The five year delay is a factor to be considered when determining Havoco's intent. However, delay alone does not result in waiver. *Lee v.*

clear that under Illinois law, waiver can be implied from conduct. *Eisenberg,* 195 N.E.2d at 187; *Havoco,* 731 F.2d at 1291. It is also clear that an essential element of waiver is that the injured party intended to affirm the contract and intended to abandon his right to recover damages. *Lee,* 68 Ill.Dec. at 520, 446 N.E.2d at 254. "If the intention to waive is implied from conduct, the conduct should speak the intention clearly." *Bankers Trust Co. v. Pacific Employers Insurance Co.,* 282 F.2d 106, 111 (9th Cir.1960); *see Havoco,* 731 F.2d at 1291. Intent is a question of fact. *Havoco,* 731 F.2d at 1293. The district court concluded that "[p]laintiff's informed decision to consummate the assignment on that date and its subsequent failure to disaffirm the contract unmistakably show an intent to relinquish its claims against defendants based on fraud." Memorandum Opinion and Order at 16. The court's analysis presumes that Havoco had the option not to consummate or subsequently to disaffirm the contract without incurring significant damage. Here, also, we do not believe that the record contains sufficient uncontroverted evidence to sustain such a claim.[6]

## CONCLUSION

It is clear from the record that, when Havoco entered into the assignment contract, it had knowledge of the facts underlying the complaint in this case. However, the record does not establish, as a matter of law, that Havoco, in assigning the contract, waived its claims for fraud and misrepresentation against the defendants. Accordingly, we reverse and remand this case to the district court for proceedings consistent with the opinion.

REVERSED AND REMANDED.

---

*Heights Bank,* 112 Ill.App.3d 987, 68 Ill.Dec. 514, 520, 446 N.E.2d 248, 254 (1983).

**6.** The district court granted summary judgment on all counts including the breach of contract count against Sumitomo. In doing so, the court, without supplying any reasons, reversed its earlier position that the waiver agreement did not apply to the breach of contract count. Havoco has argued that waiver is not a defense to several of the counts in its complaint. It did not present this argument to the district court. As a general rule, a plaintiff may waive any right to which he is entitled. *See* 28 Am.Jur.2d

*Estoppel and Waiver* § 161 (1966). Therefore, assuming that Illinois law follows the general view (a question never presented to the district court), Havoco could waive its right to sue for any of the alleged unlawful conduct.

However, on this record, we cannot hold that Havoco intended to waive any of its claims. Whether Havoco waived its right to sue on a particular count depends on Havoco's conduct or intent. The district court may ultimately determine that Havoco waived some but not all of its claims.