**DATAPOINT CORPORATION, a Delaware corporation, Plaintiff,**

v.

**M & I BANK OF HILLDALE, a Wisconsin banking corporation, Defendant.**

No. 86–C–458–C.

United States District Court,
W.D. Wisconsin.

July 13, 1987.

John S. Skilton, William M. Conley and Michael Lieder, Foley & Lardner, Madison, Wis., for plaintiff.

H. Robert Kilkelly, Lee, Johnson, Kilkelly & Nichol, Madison, Wis., for defendant.

CRABB, Chief Judge.

This civil action for money damages is before the court on plaintiff's motion for summary judgment. Plaintiff contends that defendant breached the terms of a contract by refusing to honor drafts drawn by plaintiff on a letter of credit issued by defendant.

For the purpose only of deciding the motion, I find from the parties' proposed findings of fact that there is no genuine issue with respect to the following material facts.

## FACTS

Plaintiff is a corporation organized under the laws of the State of Delaware, having its principal place of business in Texas. Defendant is a banking association organized under the laws of the State of Wisconsin, having its principal place of business in Wisconsin.

Plaintiff is in the business of manufacturing computer hardware and software. IBS Data Systems, Inc. has purchased products from plaintiff for resale for at least five years.

In 1986, plaintiff informed IBS it would not ship any goods on IBS's order no. 8094 unless the order were fully secured by cash or a letter of credit for plaintiff's benefit in the amount of IBS's order.

Defendant issued an Irrevocable Commercial Letter of Credit, number 957 dated April 24, 1986, of which plaintiff was the "beneficiary" and IBS was the "customer," as those terms are defined in Wis.Stat.

§ 405.103(1). The Letter of Credit provided that any draft be presented between June 10 and June 20, 1986, that the draft identify the Letter by use of specified language, that the draft be accompanied by the Letter, and that it contain proof of shipment of the items listed on IBS's purchase order no. 8094. The Letter provided that "all drafts must be marked 'Drawn under LETTER OF CREDIT OF THE M & I BANK OF HILLDALE No. 957 dated April 24, 1986'" and also that "Each Draft under this Letter of Credit must bear upon its face the words 'Drawn under Letter of Credit # 957 of the M & I Bank of Hilldale.'" The Letter also provided that it was subject to the Uniform Customs and Practice for Documentary Credits of the International Chamber of Commerce.

The Colonial Frost Bank of San Antonio, acting as collection agent for plaintiff, prepared and transmitted a draft to defendant on the Letter dated June 18, 1986. The amount of the draft was $153,177.00. The draft was received by defendant on June 19, 1986. Accompanying the Original Draft were the original Letter of Credit, certain supporting documentation purporting to evidence shipment of items listed on purchase order 8094 and a collection department transmittal statement of Colonial.

James Wartinbee, Jr., a vice-president of defendant, reviewed the Original Draft and other materials on June 19. He determined that the Original Draft and supporting documentation varied from the terms and conditions of the letter of credit in only one respect: the Original Draft did not refer on its face to the letter of credit on which it was drawn.

The Original Draft's absence of reference to the Letter did not create any uncertainty in Wartinbee's mind as to which letter of credit was involved; Wartinbee knew that the Original Draft was drawn on the Letter of Credit. Wartinbee concluded that the failure to reference the Letter of Credit justified dishonor of the Original Draft unless IBS agreed to waive compliance with the provision of the Letter requiring such reference. Accordingly, late in the afternoon of June 19, he called Henry Warner, the assistant to the President of IBS. Warner refused to waive the variance from the Letter's terms.

Before 5:00 p.m. on June 19, Wartinbee dictated, signed, and mailed, via certified U.S. mail, a letter to Colonial Frost Bank, informing Colonial of the rejection of the Original Draft and enclosing the Original Draft, Letter of Credit, supporting documentation and Transmittal Notice. He did not know whether the materials posted certified mail would arrive in San Antonio the next day, and he made no effort to contact Colonial or Datapoint by telephone or other expeditious means on June 19.

James Hegarty, an employee of plaintiff, called the defendant bank at about 4:45 on the afternoon of June 19, 1986, about fifteen minutes before the end of defendant's business day, to determine whether defendant would pay on the Original Draft. Wartinbee had left for the day, and although Hegarty was informed that defendant had received the Original Draft, Letter, and supporting documentation, the employee of defendant with whom he talked did not inform him whether the draft would be accepted.

Hegarty called Wartinbee on the morning of June 20, 1986. Wartinbee informed Hegarty that defendant had rejected the Original Draft because it did not state that it was drawn on the Letter of Credit and that he had returned the Original Draft, the Letter and supporting documentation to Colonial Frost Bank by certified mail on June 19. Wartinbee also told Hegarty that he had no reason for dishonor except the Draft's failure to state that it was drawn on the Letter and IBS's refusal to waive the alleged defect.

In response to the information that the Original Draft had been rejected, plaintiff transmitted to defendant, and defendant received on June 20, a Western Union mailgram stating that the Original Draft was presented to defendant under the Letter of Credit. Later on June 20, 1986, the Colonial Frost Bank transmitted to defendant, via the Zap Mail Service of Federal Express and under cover of a letter from Lewis S. Thorne, Vice-President of Colonial, a sec-

ond draft, along with facsimiles of the Letter of Credit and Supporting Documentation. Colonial sent facsimiles instead of originals because the originals were still in the mail between Madison, Wisconsin and San Antonio, Texas.

Wartinbee reviewed the Second Draft on June 20, and determined that it complied with the terms of the Letter, except that all of the accompanying documents were facsimiles instead of originals. Wartinbee talked again with Warner, who again refused to waive the alleged variance. Accordingly, defendant dishonored the Second Draft as well.

Late in the afternoon of June 20 and again on June 23, Wartinbee informed Hegarty that the Second Draft did not conform with the requirements of the Letter of Credit because it was accompanied by facsimiles rather than by original documents.

The Colonial Frost Bank received the Original Draft, the original Letter, and the supporting documentation on June 23, 1986. Colonial typed the words, "Drawn under Letter of Credit No. 957 of the M & I Bank of Hilldale" at the bottom of the Original Draft, and conveyed the revised draft (Third Draft), the Letter, and the supporting documentation to defendant. Defendant received the Third Draft, the Letter of Credit, and the supporting documentation on June 24, 1986. Defendant determined not to honor the Third Draft because it was presented after the June 20 expiration date. Wartinbee communicated this refusal to honor the Third Draft to plaintiff by letter dated June 24, 1986.

During the period from June 20 through June 24, 1986, plaintiff incurred the following costs totalling $873.10 in trying to present defendant with a draft it would accept: Federal Express, $60.00; Telegram, $37.20; and Labor, $775.90.

To date, defendant has not paid plaintiff any money under the Letter of Credit.

Plaintiff offered to settle the instant case for the sum of $153,177.00, plus interest at 5% per annum from June 24, 1986 through the date of settlement. The offer of settlement was dated December 9, 1986 and filed with the court on December 11, 1986. The offer was not accepted by defendant.[1]

## OPINION

Plaintiff has moved for summary judgment on its claim that defendant breached the terms of a contract by refusing to honor drafts which plaintiff drew on a letter of credit issued by defendant. Defendant opposes the motion, contending that it is the party entitled to summary judgment because plaintiff breached an unambiguous contract, or, in the alternative, that an issue of fact exists and neither party is entitled to summary judgment as a matter of law.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. There is no genuine issue as to the material facts set forth above, so the question is whether plaintiff is entitled to judgment as a matter of law.

The basis for this court's subject matter jurisdiction is the diversity of the parties' citizenship, 28 U.S.C. § 1332. A federal court sitting in diversity is required to apply the substantive law of the forum in which it sits. *Havoco of America, Inc. v. Hilco, Inc.*, 799 F.2d 349, 352–53 (7th Cir. 1986). Thus, the question whether plaintiff is entitled to judgment as a matter of law is determined under Wisconsin law.

Under Wisconsin law, letters of credit are governed by Wis.Stat. Ch. 405, which is the codification of Article 5 of the Uniform Commercial Code. Plaintiff contends that a Wisconsin court construing Article 5 of the UCC would hold that a draft's nonmisleading variance from the terms of a letter of credit does not justify dishonor of the draft, and that even if the variance would have entitled defendant to dishonor the

---

1. I have found that the offer of settlement was made based on the copy of the offer contained in the record. There is nothing in the record to indicate that the offer was refused, but I assume that this court would have been informed if in fact the case had been settled.

Original Draft, defendant was precluded from claiming that the Original Draft was not in accordance with the Letter of Credit because defendant did not notify plaintiff's bank of the dishonor by expeditious means, as required by the Uniform Customs and Practice for Documentary Credits of the International Chamber of Commerce, which was incorporated as part of the Letter of Credit. Plaintiff maintains that it is entitled to damages consisting of the face amount of the Letter of Credit, plaintiff's incidental damages from the alleged breach, and interest on the face amount plus the amount of incidental damages at a rate of 5% from June 19, 1986 to December 11, 1986 (the date of its offer of settlement) and at a rate of 12% from December 11, 1986 to the date payment is made.

Wis.Stat. § 405.114(1) provides in part that "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract or other contract between the customer and the beneficiary." Plaintiff does not contend that any Wisconsin court has decided whether under this section a nonmisleading variation from the terms of a letter of credit justifies dishonor. Instead, plaintiff argues that there is a trend in other jurisdictions towards finding that a substantially complying draft satisfies the requirements of Article 5, or that even under a standard of strict compliance with the terms of the letter of credit a nonmisleading variance from those terms does not justify dishonor. Plaintiff argues that a Wisconsin court would adopt one of these approaches, in line with the general Wisconsin approach toward contract law, which is that substance must control over form. *State v. J.C. Penney Co.*, 48 Wis.2d 125, 135–36, 179 N.W.2d 641 (1970).

The Supreme Court for the State of Wisconsin has held under Wis.Stat. § 405.114 that an issuing bank has a duty to determine whether documents presented by the beneficiary of a credit appear on their face to be in accordance with the terms of the credit, and that having fulfilled this duty, the bank "must honor a complying draft or demand regardless of whether the documents conform to the underlying contract ...." *Werner v. A.L. Grootemaat & Sons, Inc.*, 80 Wis.2d 513, 522, 259 N.W.2d 310 (1977). The state supreme court did not indicate what standard should be applied to determine whether a draft or demand is "complying."

It is not necessary in this case to determine whether a Wisconsin court would adopt a strict compliance or a substantial compliance standard in interpreting Wis.Stat. § 405.114(1) with regard to nonmisleading variations in general or to the omission of a reference to the letter of credit on the face of the draft in particular. Even if the variance in this case between the Letter of Credit and the Original Draft would have entitled defendant to dishonor the Original Draft, defendant's own acts preclude it from relying on the variance as a justification for the dishonor.

The Letter of Credit involved in this case incorporated the Uniform Customs and Practice for Documentary Credits of the International Chamber of Commerce. Article 16(b) of the Uniform Customs and Practice provides:

> If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, it must determine, on the basis of the documents alone, whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.

Article 16(c) states:

> The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or to refuse the documents.

Should the issuing bank decide to refuse the documents, Article 16(d) requires that the bank must:

> give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents....

Finally, Article 16(e) prescribes the penalty for failure to notify by telecommunication, or where that is not possible, by other expeditious means, as follows:

> If the issuing bank fails to act in accordance with the provisions of paragraphs (c) and (d) of this article and/or fails to hold the documents at the disposal of, or to return them to, the presentor, the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

In this case the Letter of Credit required that any draft be presented between June 10 and June 20, 1986. Defendant received plaintiff's Original Draft on June 19, 1986. Under the provisions of the Uniform Customs and Practice, incorporated by the Letter of Credit, once defendant decided to refuse the Original Draft, it was obligated to notify plaintiff to that effect without delay by telecommunication or, if that was impossible, by other expeditious means. Defendant failed to comply with this provision. Wartinbee did not attempt to telephone plaintiff or the Colonial Frost Bank to inform them that the Original Draft would be dishonored; instead, he mailed notice of the dishonor, along with the Original Draft, Letter of Credit, and supporting documentation to the Colonial Frost Bank. Common experience would have suggested that it was unlikely that Colonial would receive this notice in time to correct the variance, and in fact the letter mailed by Wartinbee was not received by Colonial in San Antonio until June 23, 1986, three days after the expiration date provided in the Letter of Credit. It would have been possible for the defendant bank to inform James Hegarty of the dishonor when Hegarty called defendant on June 19, but this was not done.

Since defendant failed to notify plaintiff of the dishonor of the Original Draft by telecommunication or other expeditious means, defendant is precluded under Article 16(e) of the Uniform Customs and Practice from claiming that the Original Draft varied from the terms of the credit. Since defendant cannot rely on the variance between the Letter of Credit and the Original

Draft as a justification for the dishonor of the Original Draft, it is not necessary to discuss whether defendant acted correctly in dishonoring the second and third drafts submitted by plaintiff.

■ It is not entirely clear from its brief, but defendant may be making an additional argument that the requirement that the Original Draft bear the words "Drawn under Letter of Credit of the M & I Bank of Hilldale No. 957 dated April 24, 1986" was a notation credit, and that plaintiff's failure to make a notation credit meant that defendant had no duty even to consider the draft, and therefore no obligation to notify plaintiff of the dishonor. However, Wis. Stat. § 405.108(1) defines a notation credit as a "credit which specifies that any person purchasing or paying drafts drawn or demands for payment made under it must note the amount of the draft or demand on the letter or advice of credit." Thus, a notation credit is a credit requiring reference to the amount of the draft or demand, not reference to the letter of credit itself. The requirement that the draft include a reference to the Letter of Credit is not a notation credit, and defendant's argument would be inapposite.

Defendant also contends that there is a disputed issue of fact whether it had a "reasonable time" to examine the documents and determine whether to honor the Original Draft, as required under Article 16(c) of the Uniform Customs and Practice, and that this allegedly disputed issue should preclude summary judgment. There is nothing in the record to indicate that this issue is disputed. It is undisputed that defendant decided to dishonor the Original Draft the same day it was received. Defendant's unfounded assertion that a disputed issue of material fact exists does not preclude summary judgment.

Wis.Stat. § 405.115(1) provides that when an issuer wrongfully dishonors a draft or demand for payment presented under a credit, the person entitled to honor may recover from the issuer the face amount of the draft together with incidental damages and interest. It is undisputed that the

amount of the draft was $153,177.00, and that plaintiff incurred costs of $873.10 in trying to present defendant with a draft it would accept. Wis.Stat. § 138.04 provides that the legal rate of interest upon any money in an action is 5%. Plaintiff will be granted summary judgment for the amount of its loss, plus interest at 5% from June 19, 1986, the date of dishonor.

Plaintiff contends that in addition to the damages to which it is entitled under Wis. Stat. § 405.115, it is entitled to interest on its judgment at a rate of 12% from December 11, 1986, the date on which it made an offer of settlement, to the date the judgment is paid, under Wis.Stat. § 807.01(4). Wis.Stat. § 807.01(4) provides that if a party who has submitted an unaccepted offer of settlement "recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid." Plaintiff contends that this court should apply Wis.Stat. § 807.-01(4) because it is substantive rather than procedural law.

■ In a federal diversity case presenting the question whether a state procedural rule should be applied, the first question that must be considered is whether there is a Federal Rule of Civil Procedure sufficiently broad in scope to control the procedural issue. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-450, 100 S.Ct. 1978, 1984-1985, 64 L.Ed.2d 659 (1980). If there is a clearly applicable federal rule, the federal rule controls, provided that it is within the scope of the Rules Enabling Act, 28 U.S.C. § 2072, and a constitutional grant of power such as the necessary and proper clause of Article I. *Ibid.*, 446 U.S. at 747-748, 100 S.Ct. at 1983-1984. If the scope of the federal rule is narrower than the scope of the state procedural rule, then the applicability of the state rule is governed by the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Walker v. Armco Steel Corp.*, 446 U.S. at 750-753, 100 S.Ct. at 1985-1986.

■ As an initial matter, I note that two judges of the United States District Court for the Eastern District of Wisconsin have held that Wis.Stat. § 807.01 is not applicable in federal diversity cases. *Hutchison v. Burning Hills Steel Co., Inc.*, 559 F.Supp. 553 (E.D.Wis.1983); *Klawes v. Firestone Tire & Rubber Co.*, 572 F.Supp. 116, 119 (E.D.Wis.1983). However, neither of these courts applied the analysis that appears to be mandated by *Walker v. Armco Steel Corp.* Instead, they simply concluded that Wis.Stat. § 807.01 is a procedural provision, and that as such it was not applicable in federal court. Although the conclusion seems logical, it does not take into consideration the general rule that *Erie* questions cannot be resolved according to a simple dichotomy between "substance" and "procedure." *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). It is necessary in this instance to determine whether there is a Federal Rule of Civil Procedure that governs the imposition of prejudgment interest against a party who has refused an offer of settlement.

Rule 68 of the Federal Rules of Civil Procedure governs offers of judgment. Rule 68 provides in pertinent part as follows:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer....

Rule 68 provides that where an offer of judgment is made by a party defending against a claim and is not accepted, and the judgment finally obtained by the offeree is not more favorable than the offer, the of-

feree must pay the costs incurred after the making of the offer. Rule 68 is narrower than Wis.Stat. § 807.01(4) in several respects. Rule 68 applies only to offers of judgment by a "party defending against a claim," and thus is not applicable to plaintiff here, while § 807.01(4) applies to all unaccepted settlement offers, regardless of which party made the offer. Furthermore, Rule 68 does not include any provision for payment of interest on the amount of a judgment by a party who rejects an offer of settlement and later has judgment entered against him or her for an amount equal to or greater than the offer of settlement. Since the scope of Rule 68 is narrower than the scope of Wis.Stat. § 807.01(4), I must determine whether the principles of *Erie Railroad Co. v. Tompkins* require application of Wis.Stat. § 807.01(4) in this case.

The intent of the *Erie* decision was to insure that in all diversity cases, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of the litigation, as it would if it were tried in a state court. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 745, 100 S.Ct. at 1982. Had this action been brought in a Wisconsin court, plaintiff would have been entitled to 12% interest on the judgment it obtained, since the amount of the judgment is greater than plaintiff's offer of settlement. I conclude that the purpose of the *Erie* decision will be served if Wis.Stat. § 807.01(4) is applied in this case, and plaintiff is awarded interest at a rate of 12% from the date the offer of settlement was made to the date the judgment is paid.

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED. The clerk of courts is directed to enter judgment for plaintiff in the amount of $154,-050.10, with interest on this amount at a rate of 5% from June 19, 1986 to December 11, 1986, and at a rate of 12% from December 11, 1986 to the date on which the judgment is paid.