ESSO PETROLEUM CANADA, A DIVISION OF IMPERIAL OIL LIMITED, a Canadian company, Plaintiff,

v.

SECURITY PACIFIC BANK, f/k/a The Oregon Bank, an Oregon corporation, Defendant.

Civ. No. 88–160–FR.

United States District Court, D. Oregon.

March 14, 1989.

Dennis P. Rawlinson, Linda L. Marshall, Daniel O. Norris, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff.

Richard G. Spier, Helen T. Dziuba, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matters before the court are the motion for summary judgment (# 45) of defendant, The Oregon Bank (the Bank), on all claims brought by plaintiff, Esso Petroleum Canada (Esso), and Esso's motion for partial summary judgment on its first and third claims for relief (#   ).

Esso alleges that the Bank wrongfully dishonored its irrevocable standby letter of credit by failing to specify the discrepancies which caused the Bank to reject the documents submitted by Esso or to notify Esso of the discrepancies in a timely fashion.

## UNDISPUTED FACTS

Esso is a division of Imperial Oil Limited, a company organized and existing under the laws of Canada, with its principal place of business in Toronto, Canada. The Bank, presently known as Security Pacific Bank, is a banking corporation organized and existing under the laws of the State of Oregon.

Prior to October 22, 1987, Esso entered into a contract with Valley Oil Co., Inc. (Valley Oil) to sell to Valley Oil amounts of aviation gasoline for a total purchase price of $1,196.580. As a condition of sale, Esso required Valley Oil to obtain a standby letter of credit naming Esso as the beneficiary. As a condition to issuing the standby letter of credit, the Bank required Valley Oil to obtain a backup letter of credit from Western Pioneer, Inc., dba Delta Western (Delta), Valley Oil's customer. On October 21, 1987, Delta transferred by wire $1,288,140 to the Bank for deposit to Valley Oil's account.

On October 22, 1987, the Bank executed and delivered to Esso an irrevocable standby letter of credit, a copy of which is attached as Exhibit "A." On November 1, 1987, Esso delivered the aviation fuel to Delta.

The letter of credit issued by the Bank to Esso on October 22, 1987 provides that it is subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision) International Chamber of Commerce (Publication 400) (the UCP). Article 48 of the UCP provides that letters of credit expiring on a day on which the issuing bank is not open for business do not expire until the end of the following day on which the bank is open for business. Therefore, since November 15, 1987 fell on a Sunday, the letter of credit did not expire until Monday, November 16, 1987.

At approximately 1:00 p.m. on Friday, November 13, 1987, Esso presented its draft for $1,218,116.90, drawn on the Bank under the letter of credit, and documents fulfilling the terms and conditions of the

letter of credit. Esso demanded immediate payment.

At 5:15 p.m. on Friday, November 13, 1987, the Bank informed Esso that it would not honor Esso's draft and demand for payment due to certain discrepancies. In a Memorandum for Credit Files dated November 16, 1987, Fred Hammack, commercial loan officer for the Bank, states that although Fulvio Santin, supervisor for foreign crude oil supply and scheduling for Esso, demanded a list of these discrepancies on November 13, 1987, the Bank did not inform Esso of them at that time. This memorandum reads as follows:

> On 11/13/87 at approximately 5:15 pm, I informed Mr. Santin that the Bank had uncovered discrepancies in the documents and would give to him by 9:00 am on 11/16/87 a written response stating what these discrepancies were.
>
> Mr. Santin asked me if I could tell him what those discrepancies were. I told Mr. Santin and the other representatives that the discrepancies involved the supporting documents but that I could not give him specifics since it was the obligation of the International Banking Department who is responsible for the review process to give the written response. I further stated that this response per Bank policy must be signed by the Head of the International Banking Department. He would be back in his office by 7:30 on 11/16/87 and would be available to sign the letter in order to meet the 9:00 am delivery time. The Head of the International Banking Department was not in the office today.

(Plaintiff's Memorandum in Opposition, Exhibit F, p. 6).

In a deposition dated August 30, 1988, Hammack states that on behalf of the Bank he informed Esso's representatives on November 13, 1987 that they would have to wait for a written response by the Bank to discover the discrepancies in the documents they had submitted to the Bank on that date. The relevant portion of this deposition states:

> Q  What was their response?

> A  They wanted to know what the discrepancies were.
> Q  What was your response?
> A  I said, I did not know.
> Q  What did they say?
> A  They implored me again about the discrepancies, and if they could talk, I believe, to someone upstairs.
> Q  What was your response?
> A  My response was they had to wait for the written response by the bank.
> Q  Did that satisfy them?
> A  I think the conversation ended, I don't think it satisfied them.

(Plaintiff's Memorandum in Opposition, Exhibit I, p. 21).

The Bank sent Esso a list of the discrepancies in a letter dated Monday, November 16, 1987. This letter stated that Esso's draft under the letter of credit:

> remains unpaid due to the following discrepancies:
> —Invoice does not show beneficiary as stated in Letter of Credit.
> —Merchandise description on invoice not per Letter of Credit.
> —Applicant name and address on invoice not per Letter of Credit.
> —Documentary requirement number 2 as stated in the Letter of Credit not presented.

(Second Amended Complaint, Exhibit E, p. 1).

On November 16, 1987, Esso attempted to correct these discrepancies and again presented its draft for $1,218,116.90 drawn on the Bank under the letter of credit demanding immediate payment. The Bank again refused to honor Esso's draft on the grounds of uncorrected discrepancies.

On January 20, 1988, various creditors of Valley Oil filed a petition in the United States Bankruptcy Court for the District of Oregon, naming Valley Oil as the debtor.

On February 10, 1988, Esso filed this action against the Bank seeking money damages in the amount of $1,218,116.90 plus interest, $935,000 in punitive damages, and costs incurred in this action.

The second amended complaint states several claims for relief in contract, equity

and tort. The contract and equity claims are as follows:

(1) that the Bank wrongfully dishonored its irrevocable standby letter of credit;

(2) that the Bank failed to specify the discrepancies which caused it to reject the draft and documents submitted by Esso;

(3) that the Bank failed to notify Esso of the discrepancies in a timely fashion;

(4) that the Bank wrongfully set off amounts owed to it by Valley Oil against funds from the special deposit made by Delta;

(5) that the Bank's conduct in this matter amounted to a waiver of its opportunity to claim that the alleged discrepancies were not in accordance with the letter of credit; and

(6) that the Bank's conduct estops it from asserting the alleged discrepancies as a defense in this action.

Esso also seeks punitive damages on the grounds that the Bank tortiously breached its obligation to deal in good faith by wrongfully, deliberately, or recklessly disregarding Esso's rights under the letter of credit.

### CONTENTIONS OF THE BANK

The Bank contends that it properly dishonored Esso's presentation of the draft because a number of discrepancies exist between the letter of credit and the documents Esso presented on November 13, 1987, as follows:

(1) *The invoice does not show the beneficiary as stated in the letter of credit*—

(a) the letter of credit requires the beneficiary to present copies of "your invoice(s)" and the invoices actually presented are on the form of "Imperial Oil Limited" rather than "Esso Petroleum, a division of Imperial Oil Limited";

(b) the invoice omits the names of Esso's responsible personnel as designated on the letter of credit; and

(c) there is a conflict between Esso's address on the letter of credit and on the invoice.

(2) *The merchandise description on the invoice does not match the description on the letter of credit*—

(a) the Certificate of Quantity for Av Gas 80/87 shows a quantity of "85,104.18," while the invoice figure is "85104.07," and the Certificate of Quantity for Av Gas 100/130 shows a volume of "1,477,675.08" U.S. gallons, while the invoice shows a volume of "1477675.34" U.S. gallons;

(b) the invoice omits unit and quantity designations;

(c) the references in the invoice are to "AVIATION GASOLINE 100" and "AVIATION GASOLINE 80," whereas the references in the letter of credit are to "aviation gasoline 100/130" and "aviation gasoline 80/87."

(3) *The applicant name and address on the invoice does not match the name and address on the letter of credit*—

(a) the applicant in the letter of credit is "Valley Oil Co., Inc.," while the buyer in the invoice is "VALLEY OIL COMPANY;" and

(b) the address of the applicant in the letter of credit is "P.O. Box 12249, Salem, Or. 97309," while the address on the invoice is "1790 16th S.E., SALEM, OREGON, U.S.A. 97302."

(4) *Esso did not present copies of documents reflecting shore sending gauge readings evidencing the same quantity, the same location, and the same date as described in the invoice as required by the letter of credit*—

(a) the Certificate of Quantity did not contain the language "shore sending gauge readings;" and

(b) the date of the invoice is "11/10/1987," and the "date shipped" on the invoice is "10/31/87."

The Bank argues that first presentations of standby letters of credit contain discrepancies forty percent of the time, and that Esso was imprudent to wait until November 13, 1987 to present its documents.

The Bank also contends that the letter of credit is subject both to the UCP and to the law of the State of Oregon because the Bank and Valley Oil are located in the State of Oregon, the letter of credit was issued in the State of Oregon, and the presentation of documents occurred in Portland, Oregon. The Bank argues that it gave Esso sufficient and timely notice of the discrepancies under O.R.S. 75.1120, which grants banks three days to determine whether to dishonor letters of credit.

Finally, the Bank contends that Esso is not entitled to punitive damages because Esso has no underlying right of recovery. The Bank asserts that even if a right of recovery exists, Esso's allegations amount to a claim for intentional breach of contract, and there is no recovery of punitive damages for breach of contract under Oregon law. Thus, the Bank argues, it is entitled to summary judgment on all of Esso's claims for relief.

## CONTENTIONS OF ESSO

Esso contends that the Bank violated UCP Articles 16(c) and (d) by failing to timely notify Esso of the discrepancies once dishonor of the letter of credit had been made on November 13, 1987, and, as a result, Article 16(e) of the UCP precludes the Bank from dishonoring the letter of credit. Therefore, Esso contends that it is entitled to partial summary judgment on its claims against the Bank for wrongful dishonor of the letter of credit and for failure to notify Esso of the discrepancies in a timely fashion.

Esso contends that the Bank's assertion of discrepancies in the documents presented by Esso is a pretext for shifting the loss caused by Valley Oil's insolvency to Esso; that the documentary requirements of the letter of credit do not require that Esso's name, responsible personnel, and address appear on the invoice; that UCP Article 43(b) allows a five percent tolerance between the quantity of the goods specified on the invoice and the Certificate of Quantity; that Esso submitted to the Bank a conversion table which the Bank could have used to determine that Esso delivered the required quantities of fuel; that the letter of credit does not require the Certificate of Quantity to reflect the quality or type of gasoline sent; that there is no requirement that the applicant's name and address appear on the invoice and that Esso cured this alleged discrepancy in any event in its second presentation on November 16, 1987; that the letter of credit does not require that the phrase "shore sending gauge readings" appear on the Certificate of Quantity and that Esso cured the remaining discrepancies in its second presentation on November 16, 1987.

Esso also contends that since the letter of credit provides that it is subject to the UCP, the Oregon Commercial Code should only apply when the UCP is silent or ambiguous. Esso asserts that even if O.R.S. 75.1120 applies, a question of fact exists as to whether the Bank unreasonably delayed in deciding to dishonor the letter of credit to protect itself from the loss caused by the insolvency of Valley Oil.

Esso argues that the courts have recognized the propriety of punitive damages in cases involving bad faith and unfair dealing, and that in a letter of credit transaction when a bank attempts to shift a loss caused by an insolvent customer to the beneficiary of a letter of credit, tort rather than contract law should apply.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2553. All inferences drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136 (9th Cir.1981).

## DISCUSSION

I. *Dishonor of Letter of Credit—(Claims for Relief 1, 2, 3, 5, 6 and 7).*

■ Esso alleges that the Bank wrongfully dishonored the Bank's irrevocable standby letter of credit when Esso properly presented Esso's draft drawn on the Bank under the letter of credit for payment. Esso contends that Article 16(e) of the UCP precludes a bank from dishonoring the letter of credit once the Bank failed to timely notify Esso of the specific discrepancies on November 13, 1987.

The Bank responds that it properly dishonored the letter of credit on both November 13, 1987 and on November 16, 1987 because the documents presented by Esso on those dates contained numerous discrepancies. In addition, the Bank contends that the letter of credit is subject to the Oregon Commercial Code, arguing that the Bank gave Esso sufficient and timely notice of the discrepancies under O.R.S. 75.1120, which grants banks three days to determine whether to dishonor letters of credit.

Both parties concede that they are bound by the UCP. Article 16 of the UCP provides, in pertinent part, that:

c.  The issuing bank shall have a reasonable time in which to examine the documents and to determine ... whether to take up or to refuse the documents.

d.  If the issuing bank decides to refuse the documents, it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him. *Such notice must state the discrepancies in respect of which the issuing bank refuses the documents and must also state whether it is holding the documents at the disposal of, or is returning them to the presentor (remitting bank or the beneficiary, as the case may be).* The issuing bank shall then be entitled to claim from the remitting bank refund of any reimbursement which may have been made to that bank.

e.  If the issuing bank fails to act in accordance with the provisions of paragraphs (c) and (d) of this article and/or fails to hold the documents at the disposal of, or to return them to, the presentor, the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

UCP Article 16(c)–(e) (emphasis added).

The issue is not whether the Bank had cause to reject the documents presented by Esso, but whether, once the Bank made its decision to reject those documents, it properly notified Esso of its decision by specifying the alleged discrepancies in accordance with Article 16(d).

In *Bank of Cochin v. Manufacturers Hanover Trust Co.,* 808 F.2d 209 (2d Cir. 1986), the Second Circuit held that an issuing bank was estopped under the UCP from asserting the confirming bank's noncompliance with the terms of a letter of credit where the issuing bank delayed twelve to thirteen days in notifying the

confirming bank of specific defects in the presented documents and of its intent to return those documents. The court stated that " '[w]ithout delay' is defined neither in Article 8 nor in any case law dealing with international letters of credit. However, the phrase is akin to 'immediate (*at once*), instant, instantaneous, instantly, prompt.' W. Burton, *Legal Thesaurus* 1053 (1980). All of these synonyms connote a sense of urgent action within the shortest interval of time possible." *Id.* at 213.

In *Datapoint Corp. v. M & I Bank*, 665 F.Supp. 722 (W.D.Wis.1987), the United States District Court held that a bank was precluded from claiming that a draft varied from the terms of the letter of credit where it failed to notify the beneficiary of the dishonor by telecommunication or other expeditious means. The court found that "[u]nder the provisions of the Uniform Customs and Practice, incorporated by the Letter of Credit, once defendant decided to refuse the Original Draft, it was obligated to notify plaintiff to that effect without delay by telecommunication or, if that was impossible, by other expeditious means." *Id.* at 727.

In the present action, Esso presented its draft for $1,218,116.90, drawn on the Bank under the letter of credit, at 1:00 p.m. on November 13, 1987. The Bank notified Esso of its decision to dishonor the letter of credit by 5:15 p.m. that afternoon. Under Article 16(d) of the UCP, the Bank was required to state the discrepancies in respect of which it refused the documents at the time it notified Esso of its refusal to honor the letter of credit. Since the Bank's notice did not state these discrepancies at that time, under UCP Article 16(e), the Bank is now precluded from claiming that the documents were not in accordance with the terms and conditions of credit. Esso is, therefore, entitled to collect funds from the Bank under the terms of the letter of credit.

Esso's motion for partial summary judgment on its first and third claims for relief is granted. Since the court has granted Esso summary judgment under its claim of wrongful dishonor of the letter of credit, it

need not address Esso's equitable claim for money had and received.

## II. *Bad Faith and Punitive Damages— (Claims for Relief 4 and 8).*

Esso contends that the Bank tortiously breached its obligation of good faith and fair dealing by setting off amounts owed to Esso by Valley Oil against funds from the special deposit made by Delta. Esso asserts that the Bank wrongfully, deliberately, or recklessly disregarded Esso's rights by failing to promptly notify Esso of its intent to dishonor the letter of credit and the specific reasons for dishonor. In addition to $1,218,116.90 in actual damages under the letter of credit, Esso seeks $935,000 in punitive damages.

The Bank contends that there was never any arrangement with Valley Oil to pay Esso the funds wired to the Bank by Delta on October 21, 1987. In addition, the Bank argues that Esso's allegations amount to a claim of intentional breach of contract, and that there is no recovery of punitive damages for breach of contract, intentional or otherwise, under Oregon law.

The general rule is that there is no recovery of punitive damages for breach of contract in actions upon private contracts; even where the breach is malicious and unjustified, exemplary damages are not allowable. *Farris v. United States Fidelity and Guaranty Co.*, 284 Or. 453, 587 P.2d 1015 (1978).

The Ninth Circuit defined letters of credit in *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550 (9th Cir. 1979). The court stated:

A letter of credit is an undertaking by the issuing bank, usually in the buyer's country, that it will pay a draft drawn on it by the seller upon presentation of specified documents, such as a bill of lading. This permits the seller to substitute the credit of a bank with an established international reputation for that of a foreign buyer whose credit worthiness may not be known in the seller's country. The bank's obligation under the letter of

credit is independent of the underlying sales contract.

*Id.* at 552–53 (footnote omitted).

In *Bank of North Carolina v. Rock Island Bank*, 570 F.2d 202 (7th Cir.1978), the Seventh Circuit found that a letter issued by the defendant bank which provided that the bank would purchase a specific promissory note from its holder in due course was a letter of credit. The court reasoned that "[i]n construing the nature and terms of a letter of credit, the same general principles apply which govern other written contracts." *Id.* at 207, citing *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465–66 (2d Cir.1970).

■ Under Oregon law, there is an obligation of good faith in the performance and enforcement of every contract. *Best v. United States Nat'l Bank*, 303 Or. 557, 561, 739 P.2d 554 (1987). Plaintiffs may recover for the breach of this obligation just as they can for the breach of any other contractual obligation. *Id.* The State of Oregon also recognizes a separate cause of action for tortious breach of the duty of good faith and fair dealing in limited circumstances where there is a fiduciary or trust relationship. *Amos v. Union Oil Co.*, 663 F.Supp. 1027, 1029 (D.Or.1987); *Harper v. Interstate Brewery Co.*, 168 Or. 26, 44, 120 P.2d 757 (1942).

In *Amos*, the United States District Court held that an oil company had a duty to behave toward its authorized dealers with good faith and fair dealing. The court stated, "[t]o prove the tort of bad faith and unfair dealing, plaintiffs must show that [a] special relationship existed between the parties, that the relationship made the injury from breach of this duty forseeable, and that the defendant breached this duty to plaintiffs' injury." *Id.* at 1029, citing *Harper, supra*. In determining whether a special relationship exists between the parties, the court must find "an element of reliance such as in partnership, insurance or franchise agreements" or determine that "one party has traditionally held vastly superior bargaining power" over the other. *Id.*

■ In the present action, the Bank does not have vastly superior bargaining power over Esso. Esso is a major oil company with access to the advice of legal counsel. Nor is there an element of reliance on the behalf of Esso, such as in a partnership, insurance or franchise agreement. The only relationship between the Bank and Esso is the letter of credit, which lists Esso as the beneficiary. Esso may recover actual damages under the letter of credit under breach of contract principles. Since this court finds that no special relationship exists between the Bank and Esso, Esso may not collect punitive damages against the Bank.

The Bank's motion for summary judgment as to Esso's fourth and eighth claims for relief is granted.

## CONCLUSION

Esso's motion for partial summary judgment (#  ) is granted as to its first and third claims for relief. The Bank's motion for summary judgment (# 45) is granted as to Esso's fourth and eighth claims for relief and denied as to Esso's remaining claims 1, 2, 3, 5, 6, and 7.

EXHIBIT   A

---

**OREGON BANK**   INTERNATIONAL BANKING DEPARTMENT
P.O. BOX 3066
PORTLAND, OREGON 97208

TELEX: 4742028
SWIFT: ORBKU568

89318

ORIGINAL

OCTOBER 22, 1987

IRREVOCABLE STANDBY LETTER OF CREDIT NO. 12690
EXPIRY DATE: NOVEMBER 15, 1987 at our office
AMOUNT:   ABOUT USD 1,196,580.00 (ABOUT ONE MILLION ONE HUNDRED
NINETY SIX THOUSAND FIVE HUNDRED EIGHTY AND NO/100 U.S. DOLLARS)

BENEFICIARY:
Esso Petroleum Canada, a Division of Imperial Oil Limited
Attn:   John McBride/Gordon McGregor
825 Don Mills Road, Dept. 43
Don Mills, Ontario, Canada M3C 1V5

APPLICANT:
Valley Oil Co., Inc.
P.O. Box 12249
Salem, Or. 97309

We hereby issue in your favor this irrevocable Standby Letter
of Credit which is available by your draft(s) drawn on us at sight
indicating our name, number and date of the Credit, accompanied
by:

1.   Two copies of your invoice(s) covering about 35,000 barrels
     of aviation gasoline 100/130 at U.S.D. 0.78 per gallon and
     about 2,000 barrels of aviation gasoline 80/87 at U.S.D. 0.77
     per gallon.
2.   Copies of documents reflecting shore sending gauge readings
     evidencing same quantity, same location, same date as
     described in invoice presented.
3.   Statement signed by an officer, and indicating that the signer
     is an officer of Esso Petroleum Canada, A Division of Imperial
     Oil Limited, stating that:   Esso Petroleum Canada, A Division
     of Imperial Oil Limited hereby certifies that invoiced
     quantities of product(s) have been delivered free and clear of
     all liens and encumbrances to Valley Oil Co., Inc., which has
     failed to pay for this product, and the monies hereby drawn
     are due and payable.

SPECIAL CONDITIONS:

1.   Partial shipments are permitted.
2.   Partial drawings are permitted.
3.   All bank advisory and amendment charges are for the account of
     the applicant.
4.   The amount available under this Letter of Credit will be
     automatically reduced without amendment by the amount of any
     wire payment(s) made by the Oregon Bank, International Banking
     Dept., Portland, Oregon, to Royal Bank of Canada for credit to
     Esso Petroleum Canada account no. 4087078, referencing this
     letter of credit.

We hereby engage with you that drafts drawn in conformity with the
terms of this credit will be duly honored on presentation.

THE OREGON BANK, A SECURITY PACIFIC COMPANY

_____           _____
AUTHORIZED SIGNATURE                AUTHORIZED SIGNATURE

35 - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
 1 - EXHIBIT 1

---

AND PRACTICE FOR DOCUMENTARY CREDITS" (1983 REVISION) INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION 400)