[No. E000814. Fourth Dist., Div. Two. Oct. 16, 1984.]

JAMES A. WALLIS, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
KROEHLER MANUFACTURING COMPANY et al.,
Real Parties in Interest.

**COUNSEL**

Miller, Madden & Theios and John J. Madden, Jr., for Petitioner.

No appearance for Respondent.

Gresham, Varner, Savage, Nolan & Tilden and Stephan G. Saleson for Real Parties in Interest.

**OPINION**

**McDANIEL, J.**—Petitioner James A. Wallis (hereafter plaintiff) has petitioned for a writ of mandate which would vacate an order sustaining real

party's (defendant's) demurrer to the second, third and fourth causes of action in his first amended complaint, this without leave to amend as to the second and fourth.

The major issue raised by the petition is whether plaintiff has succeeded in pleading a cause of action for tortious breach of contract. We conclude that he has.

### Synopsis of the Trial Court Proceedings

Kroehler Manufacturing Company is a corporation which manufactures furniture. Kroehler maintained a plant in San Bernardino at which plaintiff worked for 32 years. Sometime in early 1979 plaintiff learned that the San Bernardino plant would be closed, that he would be offered no position in any of Kroehler's other plants, and that he would be laid off effective June 1979. Plaintiff was 55 years old at this time and was not eligible for his accrued pension benefits until he reached the age of 65.

In April 1979, while plaintiff was still employed at Kroehler, he entered into a written agreement with the company which provided, among other things, that he was to receive $568.90 per month, beginning on July 1, 1979, until he turned 65. In return, plaintiff agreed not to compete with defendant's business.

The payments were made pursuant to this contract until June 1982. At that time, plaintiff received a letter from the president of Kroehler stating, effective immediately, that the monthly payments would be terminated. The letter further explained that: "This action is taken pursuant to an overall examination of the records of the corporation by new management. As you know, these gratuitous payments were initiated during a different economic climate and at a time when the company was profitable. We regret taking this action, but we have been advised that the payments are not based on a legal obligation and we cannot, therefore, justify the continued payments of same."

Plaintiff responded to the termination of payments by filing a complaint against Kroehler and its president, Michael J. Burns (hereafter collectively defendant). This complaint, as amended, contained four causes of action: (1) breach of contract; (2) bad faith breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) intentional infliction of emotional distress.

Plaintiff obtained a partial summary judgment in his favor on the breach of contract count. Defendant demurred to the remaining causes of action,

and its demurrer was sustained without leave to amend as to the second and fourth causes of action, and with leave to amend as to the third.

Plaintiff now petitions this court for a writ of mandate to compel the trial court to vacate its order sustaining defendant's demurrer. Plaintiff contends that he has pleaded facts sufficient to sustain the alternative causes of action.

█ █ We issued an alternative writ, and the matter is now before us for disposition.[1]

## DISCUSSION

### I

█ We are met at the threshold with a contention by defendant that plaintiff is procedurally precluded from alleging alternative causes of action. Defendant claims that by obtaining a partial summary judgment on his first cause of action (breach of contract), plaintiff has elected to pursue a contract remedy and therefore cannot pursue a tort remedy.

█ Generally speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts. Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial. (*Williams* v. *Marshall* (1951) 37 Cal.2d 445, 457 [235 P.2d 372]; *Thorson* v. *Western Development Corp.* (1967) 251 Cal.App.2d 206, 213-214 [59 Cal.Rptr. 299].) █ If, however, a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other. (*Mansfield* v. *Pickwick Stages* (1923) 191 Cal. 129, 130-131 [215 P. 389].) It is to such a situation that the doctrine of election of remedies pertains. It acts as a bar precluding a plaintiff from seeking an inconsistent remedy as the result of his previous conduct or election. In California, the doctrine is theorized on the principle of estoppel. "Whenever a party entitled to enforce two remedies either institutes an action upon one of such remedies or performs any act in the pursuit of such remedy, whereby he has gained an advantage over the other

---

[1]Defendant claims a writ of mandate will not lie in this instance because "[a]n order overruling a demurrer is non-appealable, and ordinarily is to be reviewed on appeal from the judgment entered after trial." (*County of Santa Barbara* v. *Superior Court* (1971) 15 Cal.App.3d 751, 754 [93 Cal.Rptr. 406].) Defendant's authority is not controlling in this action. Here the demurrer was sustained not overruled. Plaintiff cannot appeal at this point because of the one final judgment rule. To refuse to consider the petition would therefore result in a piecemeal disposition of the case. Under these circumstances, review by writ is appropriate. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 806-807 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

party, or he has occasioned the other party any damage, he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right." (*De Laval Pac. Co.* v. *United C. & D. Co.* (1924) 65 Cal.App. 584, 586 [224 P. 766]; accord *Steiner* v. *Rowley* (1950) 35 Cal.2d 713, 720 [221 P.2d 9].)

Defendant likens the case here to *Roam* v. *Koop* (1974) 41 Cal.App.3d 1035 [116 Cal.Rptr. 539], in which the court held that by obtaining a writ of attachment which was available solely under his contract action, and which had given plaintiff an advantage over defendant, the plaintiff had elected to proceed on the contract theory. The court held, although the pleading of inconsistent causes of action did not constitute a binding election of remedies, that the procurement of the attachment was a positive act in pursuit of the contract remedy which did. The *Roam* court did not apply the doctrine, however, because the defendant had waived it by failing to plead it below.

■ Contrary to defendant's assertion, *Roam* and the present case are not similar. Plaintiff here has not proceeded on only one of the remedies he is pursuing, rather he obtained a partial factual resolution dealing with one of the issues. This step did not amount to an election of remedies, and plaintiff is not barred under the doctrine.

## II

■ "It is an elementary rule that the sole function of a demurrer is to test the sufficiency of the challenged pleading." (*Cravens* v. *Coghlan* (1957) 154 Cal.App.2d 215, 217 [315 P.2d 910].) In reviewing an order sustaining a demurrer, we are required to "construe the [] complaint liberally to determine whether, assuming the facts pleaded to be true, a cause of action has been stated. [Citation.]" (*Jones* v. *Oxnard School Dist.* (1969) 270 Cal.App.2d 587, 590 [75 Cal.Rptr. 836].)

### A

#### BAD FAITH BREACH OF CONTRACT

Plaintiff claims that the following allegations pleaded in his first amended complaint state a cause of action for tortious breach of contract: (1) the contract entered into between plaintiff and defendant contained an implied covenant of good faith and fair dealing; (2) plaintiff and defendant entered into the contract shortly after plaintiff learned his employment was to be terminated; (3) plaintiff had worked for defendant over 30 years, was 55 years of age, did not have any work skills outside furniture manufacture,

and was not eligible for his accrued pension benefits for approximately 10 more years, when he would turn 65; (4) the parties were not in equal bargaining positions, defendant dictated the terms of the contract, plaintiff had no option but to sign the contract as defendant dictated; (5) because of his financial insecurity, his age, and his lack of work skills, plaintiff was in a position where he had to trust defendant; (6) defendant knew of plaintiff's precarious financial position, his age, and his lack of other work skills and knew that he relied on them for financial security; (7) plaintiff entered into the contract to secure peace of mind, comfort, happiness, and personal esteem; (8) in reliance on the contract, plaintiff did not seek other employment in the field of furniture manufacture; (9) defendant stopped making payments on the contract without regard for plaintiff's position or rights in order to increase its profits; (10) defendant lied to plaintiff about why it was stopping payments; (11) as a direct result of defendant's conduct, the plaintiff suffered damages; and (12) the defendant's actions were done with oppression, fraud and malice.

Recently, in *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, [206 Cal.Rptr. 354, 686 P.2d 1158], the California Supreme Court acknowledged, albeit somewhat tentatively, the validity of extending the tort of "bad faith breach" to contracts outside those in the insurance field. Unfortunately, in so acknowledging, the court did not specify when such an extension might be appropriate. The court did, however, intimate that the tort should only be extended to cases involving relationships with "similar characteristics" to those found in insurance contracts. For reasons which we shall explain, we have concluded that characteristics similar to those of insurance contracts are present in the case before us, and consequently that plaintiff has stated a cause of action for bad faith breach of contract.

■ Every contract contains an implied covenant of good faith and fair dealing. (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665].) In recent years, California courts have held, in certain limited circumstances, that breach of this covenant may give rise to a cause of action sounding in tort. We are concerned here with determining when such limited circumstances exist. To date, application of this tortious characterization has been confined for the most part to insurance contracts.[2] (i.e., *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809

---

[2]This tort has also been discussed in the context of wrongful discharge cases. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722]; *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917].) As will become clear, the characteristics of the insurance contract which give rise to an action sounding in tort are also present in most employer-employee relationships.

[169 Cal.Rptr. 691, 620 P.2d 141]; and *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032].) The rationale for finding tortious conduct in insurance contracts has been based largely on the existence of a "special relationship" between the parties, replete with public policy concerns. (*Egan, supra,* 24 Cal.3d 809.) Although the required standard of behavior has been articulated as giving rise to several distinct duties (i.e., *Crisci,* duty to settle with third persons; *Gruenberg,* duty not to unreasonably withhold payments to insured), they are all but "different aspects of the same duty." (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 573.) Namely, that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

What are the features of the insurance contract which distinguish it from the ordinary commercial contract? Because the law of torts is concerned chiefly with public policy goals and achieving a desirable social climate (*Egan, supra,* 24 Cal.3d 809), they must be characteristics with public policy implications. An obvious difference which the cases frequently discuss between insurance contracts and ordinary commercial contracts is a party's motivation for entering into the contract. In insurance contracts, a party does not seek "to obtain a commercial advantage but to protect [him or] herself against the risks of accidental losses, including the mental distress which might follow from the losses. Among considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss . . . ." (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 434.)

Another oft repeated difference is that there exists a "great disparity in the economic situations and bargaining abilities of the insurer and the insured. (*Barrera* v. *State Farm Mut. Auto Ins. Co., supra,* 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674].)" (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, at pp. 403-404 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) Thus, the normal protections provided a party by the open marketplace are absent in these contracts.

A further very important characteristic of the insurance contract is that ordinary contract damages are inadequate to protect the insureds' rights. In the first place, they offer no motivation whatsoever for the insurer *not* to breach. If the only damages an insurer will have to pay upon a judgment of breach are the amounts that it would have owed under the policy plus interest, it has every interest in retaining the money, earning the higher rates of interest on the outside market, and hoping eventually to force the insured into a settlement for less than the policy amount.[3] Given the relative eco-

---

[3]For an excellent analysis and discussion of the tort of bad faith breach from an "economic realism" approach, see Diamond, *The Tort of Bad Faith Breach of Contract: When, If At All, Should It Be Extended Beyond Insurance Transactions?* (1981) 64 Marq. L.Rev. 425.

nomic positions of the parties, this scenario is hardly fantastic. In fact, several cases indicate that it is not mere conjecture. (See *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980]; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376; and *Gruenberg* v. *Aetna Insurance, supra,* 9 Cal.3d 566.)

Secondly, contract damages do not adequately protect the insured's interest. Unlike a party to an ordinary commercial contract who can turn to the marketplace to replace necessary "widgets" not delivered by a breaching seller, an insured has nowhere to turn to replace monthly disability payments. Money damages paid pursuant to a judgment years after the insurer has initially reneged on payment do not remedy the harm suffered by the insured, namely the immediate inability to support oneself and its attendant horrors.

The nature of the insurance contract then creates a special relationship between the parties which requires a heightened duty on the part of the insurer not to breach the covenant of good faith and fair dealing implicit in its contract, as well as a heightened expectation by the insured that his or her contract will not be breached. Because the insured is in an especially vulnerable position, the insurer "is obligated to give the interest of the insured at least as much consideration as it gives its own interests." (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 460 [113 Cal.Rptr. 711, 521 P.2d 1103].)

██ As noted earlier, the *Seaman* court intimated that a noninsurance contract could be tortiously breached if it contained characteristics similar to those which allow a finding of tortious breach in an insurance contract. (36 Cal.3d at p. 769.) For purposes of serving as predicates of tort liability, we find that the following "similar characteristics" must be present in a contract: (1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

These criteria having been met, the party in the stronger position has a heightened duty not to act unreasonably in breaching the contract, and to consider the interest of the other party as tantamount to its own. ██ ██
██ Obviously, "[t]he precise nature and extent of the duty imposed by

such an implied promise [covenant of good faith and fair dealing] will depend on the contractual purposes" and must be defined in light of the parties' justified expectations.[4] (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809.)

Examining petitioner's complaint in light of the foregoing discussion, it is clear that the contract entered into between plaintiff and defendant, as alleged in the complaint, shares the necessary similarities with an insurance contract.

First, the parties were in an inherently unequal bargaining position because of plaintiff's need for the money and his relative lack of skills outside the furniture manufacturing area. Second, plaintiff entered the contract to secure financial stability and peace of mind. Third, ordinary contract damages offered no incentive for defendant not to breach. If plaintiff obtained a judgment against defendant for mere breach of contract, defendant would only have to pay what it owed anyway. Moreover, plaintiff's immediate precarious financial position because of the termination of payments would not be remedied by a lump-sum payment several years later. Fourth, plaintiff was in an extremely vulnerable position because of his age, lack of other work skills and financial responsibilities, and fifth, defendant was aware of plaintiff's position.

The criteria having been met, defendant had a duty not to act unreasonably in breaching the contract. We think the situation alleged here is similar to the situation surrounding a disability insurance contract, where an insured has a duty not to unreasonably withhold payments to the insured. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 573.) Plaintiff's complaint alleges a breach of that duty, and, consequently, the trial court erred in sustaining defendant's demurrer.

### B

#### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the proba-

---

[4]We take this opportunity to reiterate that a party is not automatically entitled to punitive damages for a tortious breach of the implied covenant of good faith and fair dealing. "In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud or malice. (Civ. Code, § 3294.) He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights. [Citations.]" (*Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, 462.)

bility of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.]" (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 394.)

In his fourth cause of action, plaintiff alleged that defendant's earlier noted conduct terminating the payments under the contract constituted "outrageous" behavior sufficient to satisfy the first element of the prima facie case for intentional infliction of emotional distress. Defendant contends that its conduct, as alleged, is not outrageous as a matter of law, rather it is just a simple breach of contract and cannot give rise to an action for intentional infliction of emotional distress.

 "The modern rule [defining outrageous conduct] is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress. [Citations.] . . . Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. [Citations.]" (*Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 297 [131 Cal.Rptr. 547].)

 Here, plaintiff has alleged facts which are within the purview of the quoted definition. He alleges that the defendant intentionally abused its position of financial control over the plaintiff by terminating payments without any good reason and lying about the reasons for such termination. Plaintiff alleges that the defendant knew of his vulnerable position, intended to cause him harm and that he suffered emotional distress as a result of this. These allegations, *if found to be true,* constitute a cause of action for intentional infliction of emotional distress. In the general context in which this case arose, it appears inherently improbable that the plaintiff will be able to prove what he has alleged; however, accepting the allegations as true, which we must, we hold that the court erred in sustaining a demurrer to this cause of action without leave to amend.[5]

---

[5]Although plaintiff requested that we review the court's order sustaining the demurrer with leave to amend on the third cause of action in his original request, he has not briefed this issue for purposes of this petition. He asks only that we read his points and authorities opposing the original demurrer to the trial court. Obviously this is not instructive to us as to why the court erred in sustaining the respondents' demurrer with leave to amend. Accordingly, we deem this point waived by petitioner.

## DISPOSITION

The petition is granted in part and denied in part. Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County, in civil No. 213276, to vacate its order sustaining the defendant's demurrer to the second and fourth causes of action and to enter a new and different order overruling that demurrer. Each party shall bear its own costs otherwise allocable under section 1027 of the Code of Civil Procedure. The alternative writ is discharged.

Morris, P. J., and Kaufman, J., concurred.