**ASHTON–TATE CORPORATION, Plaintiff,**

*v.*

**Richard A. ROSS, Bravo Technologies, Inc., Defendants.**

**No. C–88–2844 DLJ.**

United States District Court, N.D. California.

April 4, 1989.

Cynthia C. Cannady and Leslie A. Fithian of Fenwick, Davis & West, Palo Alto, Cal., for plaintiff.

Paul N. McCloskey and Fenn C. Horton, III of McCloskey, Kays & Horton, Menlo Park, Cal., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JENSEN, District Judge.

Plaintiff's Motion for Summary Judgment was heard by the Court on January

25, 1989. Appearing for plaintiff Ashton–Tate Corporation were Cynthia C. Cannady and Leslie A. Fithian of Fenwick, Davis and West. Appearing for defendants Richard A. Ross and Bravo Technologies were Paul N. McCloskey and Fenn C. Horton, III.

This action involves a computer spreadsheet program, "Full Impact", which plaintiff developed and is currently marketing, and which defendants allege infringes upon their proprietary interests under intellectual property, contract and tort theories.

Prior to the public introduction of Full Impact, defendant Ross demanded compensation from plaintiff based on his claim of contribution to the development of the program. In response to defendants' demands, plaintiff filed the present action for declaratory relief. Plaintiff requests that the Court declare that: (1) plaintiff owns all the existing copyright interest in Full Impact; (2) Full Impact does not infringe upon existing copyrights; (3) plaintiff did not misappropriate or use defendants' trade secrets in the development of Full Impact; and (4) plaintiff has not interfered with any contractual relationships in the process of developing Full Impact.

Defendants assert counterclaims for: (1) declaratory relief regarding defendants' rights with respect to copyright, trade secret and contract interests in Full Impact; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) tortious interference with contract; (5) violation of California trade secret statutes; and (6) violations of the Federal Copyright Act of 1976.

After reviewing the evidence and briefs submitted by the parties, the argument of counsel and the applicable legal authority, the Court hereby GRANTS plaintiff's Motion for Summary Judgment.

## I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law."

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *'specific facts* showing that there is a genuine issue for trial.'" *T.W. Electric Service, Inc. v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)) (emphasis in original). In addition, the United States Supreme Court has stated that summary judgment could issue "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S.Ct. at 2552–54.

As the moving party, Ashton–Tate bears the initial burden of identifying those portions of the record that demonstrate there is an absence of material fact. As plaintiff, Ashton–Tate bears the ultimate burden of demonstrating that there are no genuine issues of material fact regarding all the elements of its original claims upon which it bears the burden of proof. In this case Ashton–Tate is moving for summary judgment of its claims and is moving for summary judgment as a defendant to the counterclaims of Ross. In the later instance, under *Celotex*, although Ashton–Tate is the moving party, defendant Ross must make an evidentiary showing that genuine issues of material fact exist regarding all essential elements of their counterclaims, on which they will bear the

burden of proof at trial, to defeat plaintiff's motion.

Under this standard, the Court finds that the following material facts are established in this action. In September of 1984, defendant Ross and Randy Wigginton decided to collaborate on the development of a new spreadsheet software program. At that time both Ross and Wigginton were developing software independently or in conjunction with their respective software companies. Defendant Ross had begun to develop the "engine" or "back end" of the spreadsheet program prior to discussing a partnership with Wigginton, but needed someone to create a suitable "interface" or "front end." Wigginton was referred to Ross as a specialist in the development of interface systems. Defendant sought out Wigginton and the informal partnership was formed.

During September through February of 1985, Ross and Wigginton worked on their respective portions of the software program. On at least two occasions in 1984 the two met and "brainstormed" ideas and concepts for the new system. However, the actual drafting of the source code for the program occurred when the two were separated. During one of their meetings, Ross gave Wigginton a list of user commands he felt the program should contain. This list was handwritten on a single sheet of paper. *See* Exhibit 8 to the Ross Deposition. No formal or written contract, other than a non-disclosure agreement, existed between the two programmers.

In February 1985, problems arose concerning how the new software was to be published and marketed. Ross wanted to publish it through his own company, "Bravo", while Wigginton wanted to use a larger and more established software publisher.

In March 1985, Wigginton approached plaintiff and asked if it would be interested in publishing the system. Without the knowledge or consent of Ross, Wigginton showed Ashton–Tate officials the interface system he had created. Ross later learned of Wigginton's disclosure to plaintiff and called a meeting between himself, Wigginton and the Bravo board of directors on March 28, 1985. At this meeting, defendant confronted Wigginton with his knowledge of the disclosure made to Ashton–Tate and after a heated discussion, the working relationship between Ross and Wigginton was terminated.

Wigginton then went to work for plaintiff in mid-April of 1985, and altered his interface program so that it could function with plaintiff's "Alembic" engine. The combination of Alembic and Wigginton's interface became the final version of Full Impact.

Defendant also continued to work on developing a spreadsheet program. Ross created his own user interface designed to run with the original engine he programmed for the spreadsheet program. In June of 1986, defendants published this spreadsheet system entitled "MacCalc."

On April 17, 1985, Ross met with two employees of Ashton–Tate to discuss a software project unrelated to this action entitled "Framework." During this meeting, Ross and plaintiff's representatives signed a "non-disclosure" agreement binding them to confidentiality regarding the contents of the meeting. Ross contends that certain aspects of his MacCalc program were discussed at this meeting, but cannot remember the specific details of the discussion.

Defendants did not attempt to assert their alleged proprietary rights in the Full Impact program until the eve of its introduction in mid–1988.

## II. COPYRIGHT

There are several causes of action in this case based on federal copyright law. Plaintiff's first and second causes of action and defendant's first counterclaim for declaratory relief request that the Court decide the copyright interests of both parties in Full Impact. In addition, defendant's sixth counterclaim is brought under section 506(e) of the Federal Copyright Act. 17 U.S.C. § 506(e). The Court finds that an analysis of each of these claims results in a summary adjudication for plaintiff.

a) *Plaintiff's First and Second Causes of Action and Defendants' First Counterclaim.*

Defendants make two claims to support their position that they are entitled to compensation from plaintiff for the revenues generated by the marketing of Full Impact. First, defendant's contend that the user interface portion of Full Impact is a "joint work," 17 U.S.C. § 101 (1977), between defendant Ross and Randy Wigginton. Second, defendants argue that plaintiff copied source code from Ross's MacCalc engine to create the engine that runs Full Impact. After applying federal copyright law to the undisputed facts in this case, the Court finds that neither of defendants' assertions are valid.

■ Under federal law, a "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (1977). In order for an author to obtain an interest in a "joint work," federal copyright law requires that the contribution made by that author to the "joint work" is, by itself, protectable under the Federal Copyright Act. *Whelan Associates v. Jaslow Dental Laboratory, Inc.*, 609 F.Supp. 1307, 1318–19 (D.C.Pa.1985), *aff'd on other grounds*, 797 F.2d 1222 (3rd Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987); *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.*, 542 F.Supp. 252 (D.Neb. 1982).[1]

■ The foundation of federal copyright law is that only expressions of ideas, not the ideas themselves, give rise to protected interests. *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 530 (9th Cir.1987); *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); 17 U.S.C. § 102(b) (1977). Accordingly, when an author contributes only ideas to the development of a work, whether or not it is a "joint work," without reducing those ideas to an expression, that author does not obtain an interest in the work.

■ It is often difficult to determine where in the continuum between idea and expression one finds the line that, once crossed, transforms an idea into a protectable expression. In the field of computer programing it is settled that once a program reaches the source code or object code stage of development, it is an expression subject to copyright protection. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). But prior to this stage of development, ideas become expressions only if they are "original works of authorship fixed in any tangible medium of expression, ..., from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a) (1977). Copyright protection does not extend to any "idea, procedure, process, system, method of operation, concept, principle, or discovery" regardless of the form it is presented. 17 U.S.C. § 102(b) (1977).

■ In the present case, defendants claim that the handwritten list of user commands given to Wigginton by Ross is a fixed expression of Ross's ideas that is subject to copyright protection. Defendants contend that this list was utilized by Wigginton to develop the final list of user commands for Full Impact and therefore,

---

**1.** Defendants cite a recent decision from the D.C. Circuit, *Community for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1495–98 (D.C.Cir.), *cert. granted*, — U.S. —, 109 S.Ct. 362, 102 L.Ed.2d 352 (1988), for the proposition that an author's contribution to a "joint work" does not have to be copyrightable, by itself, for that author to have an interest in the "joint work."

The *Reid* decision does not support this position. As plaintiff's counsel correctly stated during oral argument, the *Reid* court held that the district court incorrectly classified the work at issue as a "work for hire," not that the work should be considered a "joint work." The court then remanded the case to the district court to decide whether the work could be classified as a "joint work," with dictum from the circuit court to guide the lower court's decision. Within this dictum, the court cites a treatise that supports defendants' position. *Id.* at 1496. However, the court specifically does not adopt the position taken by the treatise. *Id.* at 1496 (n. 15).

Full Impact is a "joint work" between Ross and Wigginton. Defendants' argument is unpersuasive.

The document given to Wigginton is only a list of labels for user commands, many of which are common commands that were already available on other software programs. There is nothing innovative or novel about the labels that Ross proposed Wigginton use for the program or the order in which they are listed on the document. The single sheet of paper does not contain any source code. The document clearly falls short of the threshold separating ideas from expressions. All Ross gave to Wigginton was a list of commands he thought should be included in the program. Ross did not contribute in any manner, including the drafting of source code, in the implementation of his suggested commands. Ross merely told Wigginton what tasks he believed the interface should allow the user to perform. This list of commands is only an idea that is not protected under federal law. *See* 17 U.S.C. § 102(b) (1977); *Frybarger v. International Business Machines Corp.*, 812 F.2d 525 (9th Cir.1987). Because Ross only contributed ideas to the Full Impact interface, which by themselves are not protectable, the program is not a "joint work" between Ross and Wigginton.

Defendants also claim that plaintiff directly copied source code from Ross's Mac-Calc engine when developing the Full Impact engine. During oral arguments on this motion, defendants requested additional time to submit supplemental briefing on this issue. The Court granted defendants request and defendants submitted supplemental argument and declarations on February 24, 1989. Defendants' supplemental brief, however, does not address the issue of direct copying of source code. The brief only provides argument concerning issues that were submitted to the Court following the January 25 hearing. Defendants have not made any evidentiary showing that Ashton–Tate directly copied source code from the MacCalc engine in developing Full Impact. Accordingly, summary judgment for plaintiff is appropriate on this issue.

Therefore, the Court finds that defendants did not either contribute to the production of a "joint work" or have their source code directly copied during the development of Full Impact. Accordingly, plaintiff's Motion for Summary Judgment is GRANTED with respect to plaintiff's first and second claims and defendant's first counterclaim.

b) *Defendants' Sixth Counterclaim.*

Defendant's sixth counterclaim is brought under 17 U.S.C. section 506(e) (1977). Section 506(e) is a criminal statute that prohibits an author from intentionally making "a false representation of a material fact in the application for a copyright registration." 17 U.S.C. § 506(e) (1977). Defendants claim that plaintiff's failure to document Ross's alleged contributions in the development of Full Impact in plaintiff's application for a copyright in Full Impact is a violation of section 506(e).

Defendants' claim fails on procedural grounds. Because section 506(e) is solely a criminal statute that does not provide a private cause of action, *Donald Frederick Evans v. Continental Homes, Inc.*, 785 F.2d 897, 912–13 (11th Cir.1986), defendants do not have standing to assert this claim. Accordingly, plaintiff's Motion for Summary Judgment is GRANTED as to defendant's sixth counterclaim.

### III. TRADE SECRETS

Plaintiff's third claim for declaratory relief and defendant's first and fifth counterclaims are based on defendants' allegations of trade secret misappropriation. Defendants contend that plaintiff misappropriated five of their trade secrets in the development of the Full Impact system: 1) The "floating window" containing textual and graphic annotations; 2) the "direct move" command; 3) the "named range reset" command; 4) the severability of the engine and the user interface; and 5) the list of user commands. The Court finds that under the California Uniform Trade Secrets Act, Cal.Civ.Code §§ 3426–3426.10 (1989), defendants' allegations of trade secret misappropriation are barred by the applicable statute of limitations. Cal.Civ. Code § 3426.6 (1989).

Section 3426.6 of the California trade secret statute provides that:

[a]n action for misappropriation must be brought within three years after the *misappropriation* is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

Cal.Civ.Code § 3426.6 (1989) (emphasis added).

Under the definition section of the Uniform Act, Cal.Civ.Code § 3426.1 (1989), the term "misappropriation" is defined as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who: ...

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: ...

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

It is undisputed that Roger Wigginton disclosed defendants' alleged trade secrets to Ashton–Tate officials in March 1985 when he gave plaintiff a demonstration of the user interface he was developing pursuant to his partnership with Ross. Defendants counterclaims for trade secret misappropriation were not filed until August of 1988. Therefore, a period of over three years transpired between the time of the disclosure and the filing of defendants' counterclaim.

Defendants contend tha their trade secret action is not time barred because the misappropriation of his ideas did not occur until plaintiff published Full Impact in 1988. Ross argues that Wigginton's disclosure in March 1985 is not a misappropriation as the information obtained by Ashton–Tate was not used until 1988. This position is not consistent with the statutory framework of the California Uniform Trade Secrets Act.

Section 3426.1(b)(2)(B) of the Act, which defendants contend is applicable to this action, clearly states that misappropriation occurs when there is a *"[d]isclosure or use* of a trade secret." Accordingly, defendants' right to sue for infringement accrued in this case in March 1985 when the original disclosure was made. Under the language of the statute, misappropriation also occurred while plaintiff was using the alleged trade secrets in the development of Full Impact. However, section 3426.6 of the Act makes it clear that "a continuing misappropriation constitutes a single claim" for infringement. *See also Whittaker Corp. v. Execuair Corp.,* 736 F.2d 1341 (9th Cir.1984). Therefore, the clock began to run on defendants' cause of action when the disclosure was made by Wigginton in March 1985.

Even if the Court accepts defendants' position that the five ideas that were disclosed to Ashton–Tate in 1985 are trade secrets [2], defendants failed to file their claim prior to the expiration of the applicable statute of limitations. Accordingly, summary judgment is hereby GRANTED for plaintiff's third cause of action and defendants' first and fifth counterclaims.

## IV. TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff's fourth claim and defendants' fourth counterclaim involve defendants' al-

---

**2.** Under California law, a trade secret claim is not actionable if the allegedly misappropriated information is "generally known to the public or to other persons who can obtain economic value from its use." Cal.Civ.Code § 3426.1(d)(1). If information is commonly known to members of an industry, it is not considered a trade secret. *Walker v. University Books, Inc.,* 602 F.2d 859, 864–65 (9th Cir.1979); *American Paper & Packaging Products, Inc. v. Kirgan,* 183 Cal.App.3d 1318, 228 Cal.Rptr. 713 (1986).

Although the Court's ruling is based on a finding that defendants' action is time barred, it appears that defendants have also failed to state a valid claim on the merits of their action. This observation is based on the detailed description provided by plaintiff of other software products on the market, prior to the publishing of Full Impact, that contain features that are identical or similar to the features in Full Impact which defendants claim were misappropriated.

legation of tortious interference with contract under state common law. *See Buckaloo v. Johnson,* 14 Cal.3d 815, 822, 122 Cal.Rptr. 745, 537 P.2d 865 (1975). Ross and Bravo allege that plaintiff induced Wigginton to breach his non-disclosure agreement with defendant that resulted in Wigginton's disclosure of the user interface in March 1985. This claim is also barred by the applicable statute of limitations.

■ A cause of action under the common law theory of wrongful inducement of breach of contract is governed by the California two year statute of limitations on tort actions. *Trembath v. Digardi,* 43 Cal. App.3d 834, 836, 118 Cal.Rptr. 124 (1974); Cal.Civ.Proc.Code § 339 (1982). The alleged tortious interference with contract in this action occurred prior to March 1985 when Wigginton disclosed the user interface to plaintiff. This counterclaim was not filed until August 1988. Therefore, this action is barred by the statute of limitations outlined in section 339. Accordingly, plaintiff's Motion for Summary Judgment of plaintiff's fourth claim and defendants' fourth counterclaim is hereby GRANTED.

## V. BREACH OF CONTRACT

■ Defendants' second counterclaim for breach of contract arises out of the alleged breach of the non-disclosure agreement signed at the April 17, 1985 meeting between the parties. The purpose of this meeting was to discuss Ross's involvement in an unrelated software project. The parties signed a non-disclosure agreement covering all information revealed regarding the unrelated project. During the meeting the parties also discussed the Full Impact and MacCalc projects. Defendants contend that the parties agreed to extend the scope of the non-disclosure agreement to include any disclosures concerning Full Impact and MacCalc.

Defendants' claim does not survive plaintiff's Summary Judgment Motion. Even if the Court accepts defendants' contention that the non-disclosure agreement also covers the April 17 discussions concerning Full

Impact and MacCalc, defendants have not met their burden under *Celotex* of making a showing sufficient to establish the existence of elements essential to their case, and on which they will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2552–54. Defendants' claim fails under *Celotex* because defendant Ross cannot recall what information regarding MacCalc he allegedly disclosed during the meeting. Defendants are therefore precluded from establishing that the non-disclosure agreement was breached by Ashton–Tate as (1) without knowledge of what information was disclosed, defendants cannot establish that the alleged disclosure was not "publicly known" information which is expressly excluded from coverage under the nondisclosure agreement, and (2) defendants cannot establish that the alleged disclosure was actually used by plaintiff in the development of Full Impact. Accordingly, plaintiff's Motion for Summary Judgment of defendants' second claim is hereby GRANTED.

## VI. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ Defendants' third counterclaim alleges that plaintiff breached the implied covenant of good faith and fair dealing covenant within the April 17 disclosure agreement. *See Seaman's Direct Buying Service v. Standard Oil Co.,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). To state a valid claim under this tort theory, a plaintiff must demonstrate that a "special relationship" exists between the parties to the contract. *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 1117, 207 Cal.Rptr. 123 (1984). Such a "special relationship" exists only when all the following factors are present in a contract: (1) inherently unequal bargaining positions; (2) non-profit motivation for entering the contract; (3) ordinary contract damages are not adequate; (4) one party is especially vulnerable; and (5) the other party is aware of this vulnerability. *Martin v. U–Haul Co. of Fresno,* 204 Cal.App.3d 396, 413, 251 Cal. Rptr. 17 (1988); *Wallis,* 160 Cal.App. at 1118, 207 Cal.Rptr. 123. Ordinary contract

damages are not available when either (a) they do not require the party in the superior position to account for its actions, or (b) they do not make the inferior party "whole." *Wallis,* 160 Cal.App. at 1118, 207 Cal.Rptr. 123.

Notwithstanding the California Supreme Court's recent reduction of the scope of this tort action, *see Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988), defendants would have a valid action under this tort if a "special relationship" existed between the parties. However, no such relationship exists as all five of the *Wallis* factors are not present. *See Martin,* 204 Cal.App.3d at 413, 251 Cal.Rptr. 17. The third *Wallis* factor is not satisfied as defendants could be adequately compensated for a breach of the non-disclosure agreement with ordinary contract damages. If defendants could prove that the contract was breached, plaintiff would be liable for foreseeable lost profits suffered by defendant as a result of the disclosure. *See Okun v. Morton,* 203 Cal.App.3d 805, 827, 250 Cal.Rptr. 220 (1988). This ordinary contract remedy would make defendants whole for any breach of the agreement. Thus, it appears that there is no "special relationship" here and no tort action for breach of the implied covenant of good faith and fair dealing exists. Accordingly, plaintiff's Motion for Summary Judgment is hereby GRANTED as to defendants' third counterclaim.

### VI.

Therefore, plaintiff's Motion for Summary Judgment is hereby GRANTED as to plaintiff's four claims for declaratory relief, and defendants' six causes of action.

Plaintiff is directed to prepare a proposed judgment in this case, to be submitted to defendants for review, and to be filed with the Court by April 14, 1989.

IT IS SO ORDERED.