**TIMBER FALLING CONSULTANTS, INC., an Oregon Corporation, Plaintiff,**

v.

**GENERAL BANK, a California Corporation, Defendant.**

Civ. No. 89–181–FR.

United States District Court, D. Oregon.

Nov. 13, 1990.

John F. Neupert, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff.

Ronald T. Adams, James M. Baumgartner, Rappleyea, Beck, Helterline & Roskie, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion for summary judgment (# 49) of defendant, General Bank.

This is an action by plaintiff, Timber Falling Consultants, Inc. (TFC), an Oregon corporation, against General Bank, a California corporation. TFC alleges three claims against General Bank: a claim for the wrongful dishonor of a letter of credit; a claim for the wrongful dishonor of a letter of credit entitling TFC to punitive

damages; and a claim for promissory estoppel.

## UNDISPUTED FACTS

TFC entered into a contract to supply logs to Richmark Corporation (Richmark) for export to the Peoples' Republic of China. Richmark contracted with General Bank to secure a documentary irrevocable letter of credit in favor of TFC.

On April 29, 1988, General Bank issued an irrevocable letter of credit in the amount of $1,759,439.30 in favor of TFC for the account of Richmark. On May 5, 1988, General Bank issued an amendment to the letter of credit, designated Amendment No. 1. Except as amended, the original terms and conditions of the letter of credit remained unchanged. In this opinion, the court will refer to the letter of credit issued on April 29, 1988 and Amendment No. 1, collectively, as the Letter of Credit.

The Letter of Credit provides that it is "SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDIT (1983 REVISION)." This language refers to Publication Number 400 of the International Chamber of Commerce, which is commonly known as the UCP. The Letter of Credit states "EXPIRY DATE: 7–7–88." The Letter of Credit also states "DOCUMENTS MUST BE PRESENTED FOR NEGOTIATION WITHIN 7 DAYS AFTER THE DATE OF ISSUANCE OF SHIPPING DOCUMENTS BUT WITHIN VALIDITY OF THIS LETTER OF CREDIT." Letter of Credit, p. 2.

The Letter of Credit contains the following language regarding revolution:

> THIS CREDIT IS REVOLVING AND BECOME[S] REINSTATED ONLY BY THE ISSUING BANK'S AUTHENTICATED AMENDMENT FOR FURTHER 2 TIMES AT THE SAME AMOUNT AND SAME QUANTITY FOR SHIPMENT DURING JULY AND AUGUST, 1988, THE TOTAL OF L/C AMOUNT SHOULD NOT EXCEED USD5,278,317.-90.
> TERMS OF REVOLVING: 1ST REVOLVING IS ON JULY 7, 1988, SHIPMENT BEFORE JULY 30, VALIDITY; 8/7/88, 2ND REVOLVING ON AUG. 7, 1988, SHIPMENT BEFORE AUGUST 31, 1988, VALIDITY 9/7/88.

*Id.* at 2.

Between May 12, 1988 and August 25, 1990, TFC presented twenty-nine separate sets of documents to General Bank for payment under the Letter of Credit. All documents were presented to General Bank through the International Banking Department of Key Bank of Oregon (Key Bank), the bank used by TFC. Each set of documents was identified by an invoice number, representing a raft of logs which had been prepared for shipment by TFC.

Invoices 1 through 10 were dated on or before July 7, 1988, and were all paid by General Bank. General Bank also paid invoices 11 through 14, which were dated July 8, 1988, July 11, 1988, July 12, 1988 and July 19, 1988, respectively. General Bank did not pay invoices 15 through 29, which were dated from July 19, 1988 to August 23, 1988. The total amount paid by General Bank to TFC under the Letter of Credit was $1,596,424.25. The amount of the outstanding invoices is $1,552,433.20.

General Bank expected to be reimbursed for the payments it made under the Letter of Credit through a backing letter of credit in the amount of $2,025,000, which was issued by the Bank of China with Richmark as the beneficiary. The backing letter of credit provided for automatic renewal of the full credit amount "upon the payment of preceding lot"—that is, when the original amount had been exhausted through payments to Richmark.

On August 17, 1988, August 22, 1988 and September 13, 1988, General Bank received amendments to the backing letter of credit from the Bank of China. These amendments to the backing letter of credit extended the shipment and validity dates of the backing letter of credit and changed certain documentation requirements and payment terms of the backing letter of credit.

On September 15, 1988, General Bank issued Amendment No. 2 to the Letter of

Credit pursuant to instructions received from Richmark on September 14, 1988. Amendment No. 2 reinstated the Letter of Credit for the first revolution in an amount not to exceed $1,696,439.29, and included additional terms and conditions. This was the only amendment to the Letter of Credit authorized by Richmark. By the time Amendment No. 2 was made, Richmark and TFC had become involved in a legal dispute relating to their rights and obligations under the Letter of Credit as amended.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). "[T]he [district] judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 798 (9th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

## ANALYSIS AND RULING

General Bank raises three arguments in its motion for summary judgment:

1. The Letter of Credit did not revolve automatically, but expired on July 7, 1988, so that General Bank was not required to make payment on documents submitted after July 7, 1988.

2. TFC cannot establish the elements of a claim for promissory estoppel under the laws of the State of Oregon.

3. There is no basis for an award of punitive damages under the facts of this case.

This opinion will deal with each of these issues separately.

### 1. *Expiration of the Letter of Credit*

General Bank contends that the language of the Letter of Credit is subject to only one reasonable interpretation: that the Letter of Credit would not automatically revolve upon expiration, but would be reinstated only if General Bank made an authenticated amendment to the Letter of Credit. General Bank argues that as a matter of law it had no obligation to pay the invoices submitted by TFC after July 7, 1988.

TFC contends that the language of the Letter of Credit is ambiguous, since it contains language that indicates automatic revolution as well as language that indicates conditional revolution. TFC argues that the parties intended the Letter of Credit to revolve automatically, as did the backing letter of credit from the Bank of China.

A letter of credit is a promise by a bank, made at the request of one of its customers, that the bank will honor demands for payment upon compliance with certain conditions set forth in the letter of credit. *Exxon Co. v. Banque de Paris et des Pays–Bas*, 828 F.2d 1121, 1124 (5th Cir.1987), *vacated on other grounds*, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988) (*Exxon I*). A letter of credit is also a contract, and therefore questions regarding the meaning of a provision in a letter of credit are to be "resolved by resorting to standard maxims of contractual construction." *Exxon Co. v. Banque de Paris et des Pays–Bas*, 889 F.2d 674, 678 (5th Cir. 1989) (*Exxon II*). Ambiguities in a letter of credit are to be construed against the

drafter. *Philadelphia Gear Corp. v. FDIC*, 751 F.2d 1131, 1139–40 (10th Cir. 1984). Furthermore,

> [w]here a letter of credit is fairly susceptible of two constructions, one of which makes it fair, customary and one which prudent men would naturally enter into, while the other makes it inequitable, the former interpretation must be preferred to the latter, and a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless. Moreover, as between the beneficiary of a letter of credit and the issuer ... if ambiguity exists, the words are taken as strongly against the issuer as a reasonable reading will justify.

*Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 466 (2d Cir.1970) (citations omitted).

■ Although the Letter of Credit contains language which indicates that the Letter of Credit will revolve only if General Bank issues an amendment, the Letter of Credit also contains language indicating that revolution will occur automatically on specific dates. TFC has submitted evidence that the Letter of Credit was intended to revolve automatically, as did the backing letter of credit issued by the Bank of China. TFC has also submitted evidence that it reasonably believed that any amendment required at the time of revolution was merely a formality which would be issued by General Bank as a matter of course.

Therefore, since the facts before the court support two inconsistent but reasonable constructions of the Letter of Credit, an ambiguity exists that precludes summary judgment. *See Bd. of Trade of San Francisco v. Swiss Credit Bank*, 597 F.2d 146 (9th Cir.1979) (summary judgment is inappropriate in interpreting a letter of credit where a party's intent is ambiguous); *Esso Petroleum Canada v. Security Pacific Bank*, 710 F.Supp. 275, 280 (D.Or. 1989) (when different ultimate inferences can be reached, summary judgment is not appropriate).

## 2. *Promissory Estoppel*

■ General Bank contends that TFC has not presented evidence which supports a claim for promissory estoppel under the laws of the State of Oregon. In order to avoid summary judgment on this issue, TFC must produce evidence of 1) a promise; 2) actual reliance upon the promise by TFC; 3) a substantial change in position by TFC; and 4) reasonable foreseeability by General Bank that its promise would induce the conduct which occurred. *Estey & Assocs., Inc. v. McCulloch Corp.*, 663 F.Supp. 167, 171 (D.Or.1986).

TFC has presented evidence that employees of General Bank told it not to worry, and that General Bank would pay TFC once it received an amendment to the backing letter of credit from the Bank of China. A promise which is conditioned on the actions of a third party can support a claim of promissory estoppel if it is reasonable to rely on the promise under the circumstances. *Gruen Indus., Inc. v. Biller*, 608 F.2d 274, 281 (7th Cir.1979). The evidence before the court creates issues of fact as to whether it was reasonable for TFC to rely upon the promises allegedly made by employees of General Bank.

TFC has presented evidence that it continued shipping logs, delayed recalling its documents from General Bank, and postponed legal action against Richmark and General Bank as a result of the assurances by General Bank. Such action or forebearance is sufficient to meet the requirement of a substantial change in position, and therefore TFC has created a genuine issue of material fact as to this element of its claim for promissory estoppel.

General Bank contends that it was not reasonably foreseeable that TFC would rely on the oral statements of its employees, Kenneth and Vincent, because these employees did not have actual or apparent authority to make such promises, and TFC did not even know the last names of these employees. However, TFC has presented evidence which could support a finding that Kenneth and Vincent did have authority to make such promises, that the circumstances made it reasonable for TFC to rely

on their promises, and that therefore it was reasonably foreseeable that TFC would rely on their promises.

Accordingly, there are genuine issues of material fact as to TFC's claim for promissory estoppel.

■ TFC also raises two related issues of fact which preclude summary judgment in favor of General Bank. First, TFC contends that even if the Letter of Credit expired on July 7, 1988, General Bank waived its right to assert expiration by accepting and making payment on invoices after July 7, 1988. An issuing bank may waive its right to insist on presentment on or before the expiration date of a letter of credit. *Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 886 (3d Cir.1977); *Consolidated Aluminum Corp. v. Bank of Virginia*, 544 F.Supp. 386, 389 n. 8 (D.Md. 1982). TFC has presented evidence which creates a genuine issue of material fact as to whether General Bank waived timely presentment by accepting and paying invoices 11 through 14 after July 7.

■ Second, TFC contends that General Bank waived its objections to presentment by failing to give timely notice that documents were being dishonored due to the expiration of the Letter of Credit as required by Article 16 of the UCP. Article 16 provides, in relevant part:

b. If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, it must determine, on the basis of the documents alone, whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.

c. The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or to refuse the documents.

d. If the issuing bank decides to refuse the documents, it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him. Such notice must state the discrepancies in respect of which the issuing bank refuses the documents and must also state whether it is holding the documents at the disposal of, or is returning them to, the presentor (remitting bank or the beneficiary, as the case may be). The issuing bank shall then be entitled to claim from the remitting bank refund of any reimbursement which may have been made to that bank.

e. If the issuing bank fails to act in accordance with the provisions of paragraphs (c) and (d) of this article and/or fails to hold the documents at the disposal of, or to return them to, the presentor, the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

This court recently applied Article 16 in a similar case, stating: "The issue is not whether the Bank had cause to reject the documents presented by Esso, but whether, once the Bank made its decision to reject those documents, it properly notified Esso of its decision by specifying the alleged discrepancies in accordance with Article 16(d)." *Esso Petroleum Canada, supra*, 710 F.Supp. at 280.

General Bank contends that the provisions of Article 16 are not applicable to the late presentation of documents, which is covered by Articles 46 through 49 of the UCP. This position is without merit. Although Articles 46 through 49 deal with issues regarding the expiry date and presentation of documents, there is nothing in Articles 46 through 49 which suggests that Article 16 is not applicable to discrepancies related to late presentation.

TFC has presented evidence which creates a genuine issue of material fact as to whether General Bank gave notice to TFC that it was refusing invoices 15 through 29 because they were presented after the expiration date, and whether any such notice

was adequate and timely under Article 16 of the UCP.

### 3. *Punitive Damages*

■ TFC contends that its claim for punitive damages is supported by *Esso Petroleum Canada, supra*, 710 F.Supp. at 281–82, and *Wallis v. Superior Court (Kroehler Mfg. Co.)*, 160 Cal.App.3d 1109, 207 Cal.Rptr. 123 (1984).

In *Esso Petroleum Canada*, this court suggested that a beneficiary under a letter of credit may recover punitive damages for a breach of the duty of good faith and fair dealing if the beneficiary shows that there was a special relationship between the parties, that the relationship made the injury from the breach of this duty foreseeable, and that the defendant's breach caused the plaintiff's injury. 710 F.Supp. at 282. However, the court also stated that where the only relationship between the parties is the relationship as beneficiary and issuer of a letter of credit, there is no special relationship between the parties. *Id.*

The *Wallis* decision was based on the laws of the State of California. Even assuming that the laws of the State of California apply to this case, *Wallis* also requires that there be a special relationship between the parties of the type discussed in *Esso Petroleum Canada*. Therefore, neither *Wallis* nor *Esso Petroleum Canada* provides support for TFC's claim for punitive damages.

Accordingly, General Bank's motion for summary judgment is granted as to TFC's claim for punitive damages.

### CONCLUSION

The motion for summary judgment of General Bank (# 49) is granted in part and denied in part. The motion is granted with respect to TFC's claim for punitive damages, and denied with respect to the other issues.